C.  L.  PARKER,  RESPONDENT,  v.  MOSES  ROGERS,
APPELLANT.

TIDE LANDS—GRANTEE OF RIPARIAN OWNER.—A person who has purchased tide land of a riparian proprietor has the exclusive right to a deed from the state to such tide land, if he makes his application to purchase in the time allowed by the statute.

DONATION LAW—BOND FOR DEED.—A bond for a deed to land, made prior to September 27, 1850, can be enforced against the obligee after he obtains a patent from the United States under the act of September 27, 1850.

WHARF RIGHTS—RESERVATION OF PRIVILEGES.—Where, in a conveyance of a lot bounded on tide water, the grantor reserves all privileges around said lot, it is a reservation of the right of wharfing.

THIS is a suit brought to have the appellant, Moses Rogers, decreed to be a trustee for the respondent, Parker, of whatever title he acquired under and by virtue of a deed executed by the board of tide land commissioners to said Rogers, lot 3, in block 8, in McClure's addition to the city of Astoria. The facts are as follows:

One John McClure, prior to the twentieth day of April, A. D. 1850, was a white male citizen of the United States, a resident of Oregon, and a married man, and was a settler and residing upon, and cultivating, that part of the public domain in Oregon afterwards known as McClure's Donation Claim, upon which a portion of the town of Astoria now stands, and which claim embraced so much of lot six in block eight as lies above ordinary high-water mark of the Columbia river.   After the passage of the act of congress of September 27, 1850, commonly known as the donation law, John McClure notified upon and continued his residence upon and cultivation of said donation claim, and in

all respects complied with the conditions and provisions of said act, so as to become entitled to said donation and to a patent; and on or about the twenty-seventh day of March A. D. 1866, a patent was duly issued to said McClure and Louisa, his wife.

Prior to the twentieth day of April, 1850, McClure had laid off a portion of said donation land claim as a town site into lots and blocks—the blocks numbered from one to eight and over—and made a map thereof. Block eight on said map, as laid out, was situated partly below and partly above ordinary high-water mark of the Columbia river —that is to say, ordinary high-water mark of the river crosses lot 6 in block 8, several feet south of the north end of said lot; and ordinary low-water mark crosses lot 3 in block 8 several feet north of the south line of lot 3—lot 3 lies immediately north of and adjoining said lot 6. On the twentieth of April, 1850, McClure delivered to one W. S. Keene his obligation under seal, and reciting that he had sold lot 6 in block 8, " being fifty feet front by one hundred in depth only, and bounded on one side by the Columbia river," and obligating himself and his heirs to make to Keene a deed in fee simple to the lot, "bounded as above described," " with a full reservation of all and every privilege around said lot."

About the fourth of February, 1858, McClure and wife conveyed all their interest in the donation claim to Cyrus Olney, including so much of block eight as was situated within the boundaries of the claim, and all the riparian rights appurtenant thereto. Olney took with notice of Keene's purchase. Thereafter, and on the nineteenth of September, 1865, Olney conveyed to the appellant said lot six in block eight. The deed contained a reservation in the following words: "Exclusive of any wharfing privileges." The appellant had already succeeded to the rights of Keene in said lot six, and was in possession of so much of it as lies above ordinary high water. Thereafter, and for a valuable consideration, Olney conveyed to the respondent, Parker, lot three in block eight.

The appellant, Rogers, on the third day of August, 1876,

procured from the board of commissioners for the sale of state lands, a deed from the state for the tide lands in front of lot number six, which covers, and under which he claims lot number three.  Prior to the application by Rogers to purchase from the state board, Parker, the respondent, had erected a wharf and building.

*Wm. Strong & Sons,* for appellant:

The land, as described in the bond of McClure to Keene of the twentieth day of April, 1850, is bounded on one side by the Columbia river.  To be sure, it says that is one hundred feet only in depth, but by the well-established rule of construction, if the one hundred feet line does not reach the Columbia river, it must be extended until it does; distances must yield to natural objects.  There is this reservation in the deed, viz.: "With a full reservation of every privilege around said lot."  This, we contend, is not sufficiently certain in description to reserve anything.  The property reserved must be described with the same accuracy as in a deed.  (3 Washb. on Real Prop. 377.)

If the reservation was good, it is to McClure alone, the word assign nowhere being used.  "A reservation being equal to a grant, there must be proper words of limitation and inheritance if the grantor intends to secure it to himself and his heirs, or to extend the enjoyment beyond his own life."  (3 Washb. on Real Prop. 377, sec. 67; 9 Johns. 73.)

It is admitted that Rogers has succeeded to all the rights of Keene, under the bond of April 20, 1850.  It is said that Rogers took a deed from Olney, September 19, 1865, containing this clause: "Exclusive of any wharfing privileges." If this is anything, it is an exception out of a grant; something which did not belong to the party who made the grant; the wharfing rights were all outside of the donation land claim of McClure.  And it is neither a principle of law nor equity, that where a party takes a quitclaim deed for a portion of a tract of land he claims, he is thereby estopped from claiming the remainder of the tract.

Our title to the property in controversy rests upon the

state deed, which stands unimpeached by the testimony. There was no mistake or inadvertence. The board intended to give the deed to Rogers, and that intention was carried out. There is not the slightest testimony going to show any fraud in act or design upon the part of Rogers in applying to purchase tide lands in front of and abutting upon land that he did own. There is nothing to justify any fraud or mistake of fact upon the state board. And it seems not altogether decorous in a state court of justice—in the supreme court of the state—that private litigants should be heard without proof, or sufficient foundation in fact to raise even a suspicion, to charge fraud upon state officials in the exercise of their quasi-judicial functions for the purpose of gaining advantage in a suit in which they alone are interested.

We also rest upon our title through the bond of McClure to Keene, and the law of this land which gives the tide land to him who owns the river bank upon which it fronts, unless some one else shall show that he is entitled to purchase under some provisions of law, and has purchased. Until he has purchased, what right has he except to present his proofs to the board and ask the proper courts for a mandamus to compel them to make a deed? The title or claim of Parker, the respondent, must come either from the deed made to him by Cyrus Olney on the eighteenth of November, 1870, or it must come through proceedings before the state board of commissioners for the sale of state lands.

Now as to the claim of title by the deed: To hold that McClure could convey this to Olney and Olney to Parker, and thus give him a good title to the same on the ground that McClure acquired such title under his donation patent, would be to hold that all patents of land that fronts on tide water embrace the tide lands in front of them, and that the state is not the owner of such tide lands. Did he acquire any rights under the state tide land laws? The land claimed by the respondent is tide land, and there is other tide land between it and the bank above high water. The statute provides that the owner of land abutting or fronting on the river has the absolute right to purchase all the tide land in

front of the land so owned, subject to the following proviso. Provided, that if valuable improvements have been made upon any of the tide lands of this state before the title to the land on the shore shall have passed from the United States, the owner of such improvements shall have the exclusive right to purchase the lands so improved, extending to low-water mark, for the period of three years from the approval of the act to which this is amendatory. (Act approved October, 1874. The act to which it was amendatory was approved October 28, 1872.)

Parker is clearly not entitled to claim the patent from the state, because he does not own the bank upon which it fronts. He is clearly not entitled under the proviso; for, as has been before shown, the title passed from the United States on the twenty-seventh day of March, 1866, and Parker made no improvements, valuable or otherwise, and none were made on said land by any one else prior to the time when Parker bought this property of Olney, November 18, 1870.

*Dolph, Bronaugh, Dolph & Simon,* for respondent:

A grant of land adjacent to a navigable stream extends only to meander lines of ordinary high water. (*Hinman* v. *Warren,* 6 Or. 408; *R. R. Co.* v. *Schurmeir,* 7 Wall. 272; *Kraust* v. *Crawford,* 18 Iowa, 549.) The owner of the shore, by virtue of such ownership, has a right to construct wharves, bridges, piers, and landing places below low-water mark, if he conforms to the regulations of the state, and does not obstruct the paramount right of navigation. (*Dalton* v. *Strong,* 1 Black, 23; *Railroad Co.* v. *Schurmeir,* 7 Wall. 272; *Lockwood* v. *N. Y. & New Haven Railroad Co.,* 37 Conn. 387; *Yates* v. *Milwaukee,* 10 Wall. 497; *Grant* v. *Davenport,* 18 Iowa, 179; Angel on Tide Waters, 171, 234; *Bowman's Devisees* v. *Watham,* 2 McLean, 376; *Austin* v. *Carter,* 1 Mass. 231.) This right may be transferred without the shore, or may be reserved upon sale of the shore. (*Goodsell* v. *Lawson,* 42 Md. 348; *Elizabeth Phillips* v. *Jacob Rhodes,* 7 Met. 322; *Emuns* v. *Turnbull,* 2 Johns. 322; *Welch et al.* v. *Taylor et al., ante.*)

Tide lands belong to the state by virtue of its sovereignty,

and do not pass by United States patent. (*Hinman* v. *Warren,* 6 Or. 408; *Welch et al.* v. *Taylor et al., ante.*) Prior to the conveyance from Cyrus Olney to the appellant, April 19, 1865, Olney had a right under the act of October 17, 1862, to wharf out in front of lot 6, and this right he reserved. (General Laws, 787.) Application to purchase tide lands confers a right to be lost only by the fault of the applicant. (43 Cal. 56.) Parker was entitled to purchase under the amendatory act of 1864, and Rogers was not entitled to purchase under either act. (General Laws of Oregon, sec. 69, p. 644; Laws of 1874, 76.) A party obtaining a grant or patent from the state to lands which equitably belong to another, will hold the legal title in trust for that other. (33 Cal. 262, 263; 20 Ark. 664; 38 Cal. 90; 30 Cal. 306, and cases cited; 6 Or. 26.)

By the Court, Boise, J.:

From the admitted facts, Rogers, before he received the deed from Olney, was the owner in equity of lot 6 in block 8 in the city of Astoria under the bond executed by McClure to Keene, for it has been uniformly held that a contract for the sale of a donation claim by one in possession under the provisional government of Oregon made prior to September 27, 1850, the date of the donation law, so called, can be inferred against the obligee, who afterwards obtains a patent under such act, or his assignees, who buy with notice. (*Lamb* v. *Davenport,* 1 Sawyer, 609.) The words in said bond, " with a full reservation of all and every privilege around said lot," were undoubtedly intended to operate as a reservation of the right to build a wharf. The language being general and reserving, all privileges would include everything appurtenant to said lot, and is more comprehensive than the reservation in the deed by Olney to Rogers, when wharfing privileges alone are reserved to the grantor; so that the deed from Olney to Rogers granted to him all the interest in the lots which he was equitably entitled to under the bond from McClure to Keene. Such being the situation of the parties, Olney and Rogers, in reference to the title to lot 6, we will now consider what rights were con-

ferred on them, or on either of them, by the law of 1862, granting the right of building wharves to persons owning lands on tide waters. Section 1 of that act provides, "that the owner of any land in this state, lying upon any navigable stream or other like water within the corporate limits of any incorporated town therein, is hereby authorized to construct a wharf or wharves upon the same, and extend such wharf or wharves into such stream or other like water beyond low-water mark, so far as may be necessary and convenient for the use and accommodation of any ships or other boats or vessels that may or can navigate such stream or other water."

At the time this law was enacted, Astoria was an incorporated town, and as the evidence shows, had been laid out into blocks and lots, and some of these lots were situated entirely below high-water mark; such lots as were below high-water and above low-water were the property of the state, and no law had then been enacted providing for the sale of tide lands. When, therefore, a franchise was granted to the owner of any land lying on tide water to construct a wharf on his said land and extend it beyond the line of low water, such franchise necessarily included the right to build the wharf over the land between high and low water. Why the statute makes no mention of the tide lands over which the wharf must necessarily be extended is not now apparent, and it may be that it was then thought that these lands were private property and the subject of sale, as they were then claimed as such property, being sold like the lands above high water. The legislature seems to have assumed that these tide lands were the subjects of sale by the owner of the adjacent land above high water in the act of 1874, where it is provided that the purchaser of any tide land from the owner of the land adjacent to such tide land shall have the right to purchase the same from the state. By this act the legislature recognizes the rights of purchasers from adjacent owners. It is a clear rule that any franchise which is the subject of sale may also be the subject of reservation.

We are aware that it is a general rule that what is appur-

tenant to land, passes with it, being an incorporeal heredita-ment, but the right to build a wharf on the land of the state below high water, is a franchise which attaches to the tide land, and it is appurtenant to it rather than to the adjacent land, for it can be severed from the adjacent land and en-joyed without it. The legislature has established the right of the adjacent owners to sell the right of wharfing on the adjoining tide lands, by recognizing such sales and giving the owners thereof the preference to purchase.

There is no other construction that will harmonize these statutes and carry out the evident intention of the legislature to secure these lands to those who 'have purchased them from the owners of the adjacent lands and made improve-ments on them. It seems to have been the uniform purpose of the legislature to protect those who had purchased these lands from riparian proprietors or who in good faith had made valuable improvements on them. For the act of 1872 (General Laws, 644) provides for the protection of those who had made such improvement on the tide lands prior to the issuance of a patent to the adjacent lands. This act being deemed insufficient, the act of 1874 was passed, which has extended the provisions of the act of 1872, and provides for protection of those who have purchased tide lands from the proprietor of the adjacent land. Though the state was under no legal obligation to recognize the rights of either the riparian owner or those who had occupied these tide lands, still the legislature, considering the fact that these lands had been dealt with as private property and improved sometimes by the erection of expensive structures which were a great advantage to commerce, made what we think wise and just provisions for the protection of those who had spent their money in purchasing and improving these lands, which improvements were in many cases absolutely necessary as aids to commerce.

We think the admitted facts in this case show that Parker was a purchaser of the former adjacent proprietor, who had reserved the right of wharfing, and that that right, under the laws of the state, did not belong to Rogers. At the time the application for purchase of the land in controversy was

made to the state board, Parker had the exclusive right to purchase the land from the state, and the deed from the state should have been given to him and not to Rogers.

The decree of the circuit court will be affirmed.