## COLLEGE PROPERTIES WHICH ARE NOT EXEMPT FROM TAXATION.

Common Pleas Court of Knox County.

### KENYON COLLEGE v. JOHN K. SCHNABLY, TREASURER OF KNOX COUNTY.

Decided, January, 1909.

*Educational Institutions—Taxation of Property Belonging to—But not Used Exclusively for Educational Purposes—Burden of Proof—Property Under Lease for an Affiliated School—Section 2732.*

1. The institution of learning located near Mt. Vernon, Ohio, and known as Kenyon College, is a "public college" and an "institution of purely public charity," within the meaning of Section 2732.
2. The connection between a college and buildings and lands belonging thereto, required by this statute in order to exempt such property from taxation, implies the exclusive use of such property for educational purposes.
3. The burden of proving that property belonging to an institution of learning is exempt from taxation is on the plaintiff.
4. Residence properties occupied by college professors who accept a lower salary in consideration of being permitted to occupy such properties free of rent; unproductive woodland and vacant land in nowise connected with the college, land rented for crops or pasture or held for speculative purposes, land used for a pumping station and a stand-pipe for a water system from which revenue is derived, or a building used for storage, are all subject to taxation.
5. But property leased to parties under an agreement requiring that they conduct therein a grammar school, which is treated as a preparatory department of the college, is not taxable while so used, but becomes taxable upon the burning of the buildings and the abandonment of the site for grammar school purposes.

*W. A. Hosack,* for plaintiff.
*Greer & Greer,* contra.

WICKHAM, J.

This action was brought by the plaintiff to enjoin the defendant, as treasurer of Knox county, from collecting the taxes, penalty and interest on twenty-three separate tracts or parcels of real estate belonging to the plaintiff, which the auditor of

the county placed on the tax duplicate, with one or two exceptions only, for the years 1901 to 1907, inclusive.

It is the claim of the plaintiff that the several pieces of real estate described by it in its petition are exempt from taxation; the defendant, as treasurer, claims that it is all taxable. A temporary injunction was granted at the time the suit was commenced, and the defendant was temporarily restrained, as prayed by the plaintiff, and the cause is now submitted to the court on its merits.

The statute under which the plaintiff claims the property described in its petition to be exempt from taxation is that part of subdivision first of Section 2732 of the Revised Statutes of Ohio, which is expressed in the following language:

"All public colleges, public academies, all buildings connected with the same, and all lands connected with public institutions of learning, not used with a view to profit."

The classes of property that are made exempt from taxation by this language are:

1.   All public colleges or academies.

2.   All buildings connected with the same. ·..·

3.   All lands connected with public institutions of learning, not used with a view to profit.

The legislative intent of the language describing the first class is not easily discerned. A college is not a corporeal thing; it is a corporation; it is intangible; it is only its property that is tangible, and it is only tangible property that is taxable. It would be ridiculous to speak of a levy of a tax on a college, except by way of a tax on its tangible property. Our view is, that the language, "all public colleges," is meaningless, and that the legislative intent is found in and covered by the language in classes 2 and 3, which deal with the lands and buildings of public colleges, and nothing else is intended by that part of the section.

Before construing the language of the statute, it may be premised that the plaintiff is a public college within the meaning of the first subdivision of the section. And further, that it is an institution of purely public charity within the sixth subdivi-

sion. *Gerke* v. *Purcell*, 25 O. S:, 229; *Library Ass'n* v. *Pelton*, 36 O. S., 253; *Little* v. *Seminary*, 72 O. S., 417.

We do not consider it a matter of importance, however, whether ·the question of exemption of the plaintiff's property arises under the first or sixth sibdivision of the statute, for it is determined by the use to which the property is applied.

"The use to which the property is devoted determines its right to exemption, under any clause of the section." *Watterson* v. *Halliday*, 77 O. S., 180, opinion.

"All buildings connected with the same". (*i. e.*, public colleges) are exempt. Connected how, or in what manner? Not physically, certainly. It would be a reflection on one's intelligence to assume that he would claim it meant physical connection of the building with the land used for the college purposes; not to speak of the impossibility of a physical connection of a building with an incorporeal thing or person created by fiction of law, and existing only in idea. The connection, then, of the building with the college, must be one of use. It might be expressed in this form: "all buildings belonging to a college and used by it for educational purposes are exempt."

The same construction should be placed on the clause following: "all lands connected with public institutions of learning." The connection must be in use, and the use must be of an educational character; that is, one that enables the college to better carry on the work for which it is created.

The educational use to which the property is applied must be exclusive. The property must not be used in whole or in part for profit. "Not used with a view to profit," applies to both buildings and land, and the cases sustain the construction that the property is not exempt, unless the property is used exclusively for educational purposes.

In *Library Ass'n* v. *Pellon*, 36 O. S., 253, the court, speaking on this subject say, at page 259:

"The argument is, that as the word exclusively is omitted in the act of 1864, it was intended to change the law as construed in *Cincinnati College* v. *State*, and that now, if part only of the building is so used, and the residue is rented, the whole is exempt. This construction would defeat the limitation found in the words 'not leased or otherwise used with a view to profit.' "

In *Watterson* v. *Halliday*, 77 O. S., 150, the court say, at page 173:

"And in this connection it is well to note the frequency of the use of the word 'exclusively' in the several clauses of Section 2732, *supra*. It was evidently intended that such word should be given special consideration when the right to exemption of property is presented for decision, and its frequent use by the Legislature, we think, is significant."

The same construction was placed on the part of the section under consideration by the Circuit Court of Cuyahoga County in *Myers* v. *Aikens*, reported in 8 C. C., 228:

"The language in the section preceding that quoted shows conclusively that all that is necessary to exempt the property is, that it shall be used exclusively for the purposes named."

Keeping in mind the foregoing rules of construction, we come now to a consideration of the facts of the case and their application to the different pieces of property claimed by the plaintiff to be exempt.

Tract No. 1 (as described in the petition) and known as Dr. Pierce's residence; tract No. 2 called Park cottage; tract No. 3 known as Professor Benson's cottage; tract No. 4 known as Sunset cottage; tract No. 5 known as Professor Hitchcock's residence; tract No. 9 consisting of three acres, on which are two dwellings, known as Dr. Jones' house and Prof. West's residence; tract No. 10 known as Dr. Davis' residence; tract No. 11 of one-half acre known as the Foote property; tract No. 12 called the janitor's residence; tract No. 13 known as Prof. Newhall's residence, and tract No. 1 on page 6 of petition known as the residence of Mr. Rust, may be all classed together. The evidence shows that they are residence properties, occupied for years and still occupied as homes or residences of professors of the college, but with one exception, the janitor's residence.

The properties are not used exclusively for educational purposes. They are, in a sense, rented or leased to their occupants.

Dr. Duvall, one of the professors and the treasurer of the college, testifies:

"If we hadn't those (the residences) we would probably have to pay higher cash salaries. It is part of the professor's

compensation, and if it was more advantageous to us to sell it, and put the money out on interest and pay the professors a higher salary, we would probably do it. It is a question of making the best use of the property, and keeping up the expenses of the institution."

The evidence is that no rental is paid in cash by any of the occupants. The professors are employed and paid a salary, and in addition a residence is furnished each, if he has a family. It is understood by them when they are employed that, in addition to their salary, they are to have a residence rent free; but, as Dr. Duvall says, the use of the residence may be regarded as part of their compensation.

Residence properties are no part of the institution of learning, and are not necessary to its existence, and should be clearly distinguished from the college buildings used as libraries, recitation rooms, and in other ways as a part of the institution itself.

I have been much interested in the case of *Kendrick* v. *Farquhar*, 8 O., 189. It is particularly interesting because the same question was involved that we now have in the case before us, in regard to the exemption from taxation of professors' residences of Kenyon College. The case went to the Supreme Court from this county, and it originated at Gambier more than seventy years ago. The plaintiff was a professor of Kenyon College. The defendant broke and entered the plaintiff's house to distrain for taxes due on the house. The plaintiff brought an action against the defendant for damages on the ground that the house was exempt from taxation, and the defendant was guilty of trespass in attempting to make the distraint. I commend to counsel's perusal and consideration the argument of that able lawyer of this bar, and counsel for the defendant in that case, Henry B. Curtis. The court adopted Mr. Curtis' view of the case, and while the statute at that time was different in some respects from our present statute, much that Mr. Curtis there said is equally as appropriate now.

Our conclusion is that the residence properties hereinbefore designated are not exempt from taxation.

To avoid carrying this opinion out to too great a length, we will state our conclusions in reference to some of the tracts or parcels of real estate, without giving any extended reasons therefor.

Tract No. 2, on page 7 of the petition, consisting of four acres of land, called the French property: This is now a vacant lot; the building was burned some time ago, just when the evidence does not show. The property is not used in any manner by the plaintiff in connection with the college, and is not exempt.

Tract No. 7, in consecutive order described in the petition, consisting of twenty acres of land adjoining the cemetery: This is a tract of unproductive woodland in nowise connected with the college, in the statutory sense of the term. In the case of each tract, the burden is on the plaintiff to prove it is exempt from taxation. So far as the evidence shows this tract is held by the plaintiff for speculative purposes, with a view of prospective profit. It is properly taxed.

Tract No. 8 consists of 10 or 12 acres of land used for pasture and agricultural purposes. It is rented by the college, and has been rented for cash or grain rent for a number of years. It is used with a view to immediate profit, and is taxable.

Tract No. 1 on page 7 of petition, called "Bishop's Backbone": This is a tract of land of 28.62 acres, part cleared and part woodland. It is not fit for agricultural purposes, but is used in part for pasturing stock. It belongs to the same class of property as the 20-acres tract, and is taxable.

Tract No. 14, page 6 of petition: This is a tract of one-half acre on which there is a pumping station, some wells, and a small house in which lives the employe of the plaintiff who has charge of the pumping station. It appears from the evidence that in 1902 the plaintiff constructed a water plant or system for furnishing water to the college buildings, the homes of the professors of the college and perhaps other employes. In addition to that, water has been furnished a number of the citizens of the village who are in nowise connected with the college. The water plant was constructed and has since been maintained, and a rental or water rate charged all the professors and other citizens whose residences are connected with the plant. The revenue derived from the sale of water amounts to about $180 per year. The use of the one-half acre is a part of the compensation of the man who attends to the pumping station. The maintenance of a water system and sale of water can not be

said to be a part of the business of a public college; the land used for that purpose is diverted from college uses. It is, no doubt, a great convenience to the college and those who are fortunate enough to be its patrons as purchasers of water privileges; but lands devoted to uses that are convenient are not, for that reason, exempt from taxation. This property is properly on the tax duplicate.

Tract No. 15, on page 6 of petition: This is a lot 65 by 130 feet on which is located the stand pipe of the plaintiff's water plant. It is a part of the system itself, and like tract No. 14, and for the same reasons, is taxable.

Tract No. 6, subdivision 1, page 3 of petition: This is a tract of land of 45 acres, near the village of Gambier, commonly known as the Military Academy Grounds. Taxes are charged on this tract for the years 1901 to 1907, both inclusive. Prior to 1900, the land and buildings thereon were used by the plaintiff as the seat of its preparatory department. In November, 1899, a contract was entered into between the plaintiff, of the one part, and Hills and Wyant, of the other part, by which Hills and Wyant were to take charge of and conduct a grammar school for three years, from July 1, 1900. The contract by its terms was renewable for two years longer, at the option of Hills and Wyant, expressed in writing six months before July 1, 1903. It appears, however, from the evidence, that the grounds and buildings were in possession of Wyant and Williams at the time of the destruction of the three main buildings, which were burned early in February, 1906, under the written contract with Hills and Wyant, a copy of which is in evidence, or another contract embodying the same provisions.

It is claimed by the defendant that the land and buildings were taxable for the years 1901 to 1905, inclusive, because of that contract, which is denominated a lease; that by leasing the property, it was used by the plaintiff with a view to profit, and, therefore, became taxable.

But was the contract really a lease? Or, what would probably be a more pertinent inquiry, was the property, by the contract, let or demised by the plaintiff with a view to profit? It stipulated for the payment by Wyant and Williams of $2,000

yearly; but it was also agreed by the college that one-half of all the money received by its treasurer from students admitted into Kenyon College from the grammar school, would be paid to Wyant and Williams, but not for more than two years after the admission of any such student; and the money so paid was to be expended in improvements, etc., on the property.

It was further stipulated that the grammar school should be conducted as a preparatory school for Kenyon College; and that Wyant and Williams should "use their earnest efforts to obtain for said grammar school the largest number of pupils that may be practicable, and will use their best endeavors and influence in every right and proper way to promote the welfare and prosperity of Kenyon College, preserve harmony and mutual friendship between the students of the college and grammar school, and to secure of their pupils a preference for entering Kenyon College."

It provided further that the grade of instruction should be such as to fit the student for admission in the freshman class of Kenyon College.

Taking the contract by its four corners and construing it, we are of the opinion that it was not a contract made with a view to profit on the part of the college, but was an agreement by which Wyant and Williams assumed the responsibility of the management and control of the preparatory department of the college, and its financial responsibilities. The "view to profit," if any, was on the other side of the contract. But whether Wyant and Williams did actually profit by the plan, we are not informed, nor is it material. By the contract the college did not relinquish all control of its preparatory department, but by its terms bound the other parties to conduct the school for Kenyon College; and provided for an immediate forfeiture of the contract by a breach of any of its terms.

We find and hold, that the contract was not made on the part of the college with a view to financial profits, but rather with a view of promoting and furthering the interests of Kenyon College, as a public institution of learning. It follows from this that the property was not taxable for the years 1901 to 1905 inclusive.

After the buildings were burned the school was discontinued on that property, and it has not since been used for that purpose. Some of the land has been cultivated, and about sixteen acres, in all, has been used for agricultural purposes. The remainder is mostly woodland and has not been used for any educational purposes. The use of the land has been diverted from college purposes, and for the years 1906 and 1907 belongs in the same class of property as "Bishop's Backbone," and is subject to taxation for those years.

Tract 6, subdivision 2, the building called "Drill Hall": This was one of the buildings used by the grammar school. Since the fire its use for school purposes has been abandoned. The only use to which it has been put is storage. Like the land it should not be taxed for the years 1901 to 1905, but is taxable for the years 1906 and 1907.

Tract 6, subdivision 3, the building called "Milnor Hall": What has been said in reference to subdivision 1, as of the time before the fire, applies to this building, and we find it was not taxable.

Tract 6, subdivision 4, the building called "Delano Hall": This building, like "Milnor Hall," and for the same reasons, was not taxable.

Tract 6, subdivision 5, the building called "North Annex": This building, like the preceding, was not taxable.

The west end of Inlot No. 25, known as the Brown property: This property has been used as a residence property; it was purchased by the plaintiff and added to the college campus. It was placed on the tax duplicate after it became a part of the campus. It is clearly exempt from taxation.

Let counsel prepare and file a journal entry in conformity with this opinion. It may show motions for a new trial filed and overruled, with exceptions. Bond for appeal, $200. Let each party pay one-half of the costs.