Argued January 16; decided March 4, 1895.

## ASTORIA EXCHANGE COMPANY *v.* SHIVELY.

[39 Pac. 398; 40 Pac. 92.]

TIDE LANDS—SECTION 855, HILL'S CODE.— Section 845 of the act of October eleventh, eighteen hundred and sixty-two, entitled "An act to provide a Code of Civil Procedure," ( now section 855, Hill's Code,) which, in subdivision 5, provides that when tide water is the boundary in a conveyance of real property, the rights of the grantor to low-water mark are included, and also the right of the state between high and low-water mark, did not operate as a grant by the state of its tide lands to the proprietors of the adjacent bank, and was never intended to so operate.

APPEAL from Clatsop: THOS. A. McBRIDE, Judge.

This is a suit brought by the Astoria Exchange Company against Charles W. Shively and Annie M., his wife, to quiet its title to certain tide lands in front of the city of Astoria. There was an answer filed, and a demurrer thereto having been sustained, plaintiff was allowed to dismiss without prejudice to its rights. Defendants appeal from both rulings. AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Sidney Dell.*

For respondent there was a brief by *Mr. John Q. A. Bowlby.*

PER CURIAM.   The facts of this case are similar in all their controlling features to the case of *Bowlby* v. *Shively,* decided by this court June eighteenth, eighteen hundred and ninety-two, 22 Or. 410, (30 Pac. 154,) and affirmed on writ of error by the Supreme Court of the United States: *Shively* v. *Bowlby,* 152 U. S. 1 (14 Sup. Ct. 548).   After a most careful consideration of the case at bar, we are satisfied that all the points and principles of law arising therein were involved and ably and exhaustively considered in the case of *Bowlby* v. *Shively,* 22 Or. 410, (30 Pac. 154,) and fully and comprehensively settled.   We must, therefore, regard the decision of the latter case as decisive of this. The complaint herein was filed upon the same date as that in *Bowlby* v. *Shively,* and the issues, so far as they were concluded, were formulated about the same time.   The Bowlby case was first brought on for hearing as a test case, upon the assumption that the same conclusion must necessarily be reached in both cases, but now it is claimed that this case contains other points for our consideration not passed upon in that.   With this contention we are unable to concur.   It could accomplish no good purpose for us at this time to reconsider the doctrine of that case, as the reasoning and conclusions reached are in full accord with the present views of the court.   Hence the judgment of the court below is affirmed.   AFFIRMED.

Decided April 29, 1895.

ON REHEARING.
[40 Pac. 92.]

Opinion by MR. JUSTICE WOLVERTON.

By appellant's motion for rehearing we are asked to

construe that portion of section 855, Hill's Code, being section 845 of an act entitled "An act to provide a Code of Civil Procedure," passed by the legislative assembly of the State of Oregon, and approved October eleventh, eighteen hundred and sixty-two, which reads as follows: "The following are the rules for construing the descriptive part of a conveyance of real property, when the construction is doubtful, and there are no other sufficient circumstances to determine it: Subdivision 5. When tide water is the boundary, the rights of the grantor to low-water mark are included in the conveyance, and also the right of this state between high and low-water mark." It was claimed for this statute on the hearing that it is declaratory of the common law relating to tide lands, and that it operated to confirm the ownership of the soil whereon the tide ebbs and flows to low-water mark in the proprietor of the adjacent bank.    The case of *Bowlby* v. *Shively*, 22 Or. 410, (30 Pac. 154, 152 U. S. 1, 14 Sup. Ct 548,) settles the question as to what was the status of tide lands under the law when the state was admitted into the Union.    LORD, J., at page 427, 22 Or. (page 15, 30 Pac.), says: "It appears that when the State of Oregon was admitted into the Union, the tide lands became its property, and subject to its jurisdiction and disposal; that, in the absence of legislation or usage, the common-law rule would govern the rights of the upland proprietor, and by that law the title to them is in the state; that the state has the right to dispose of them in such manner as she might deem proper, as is frequently done in various ways, and whereby sometimes large areas are reclaimed and occupied by cities, and are put to public and private uses, state control and ownership therein being supreme, subject only to the paramount right of navigation and commerce. The whole question is for the state to determine for itself; it can say to what extent it will preserve its rights of own-

ership in them, or confer them on others." The statute
above cited was the first passed since the state's admission
having any reference whatever to tide lands, hence the
law as it affected or determined the status of such lands
stood the same at the passage of the act as when the state
was admitted. It was therefore not the law of Oregon
upon the date of said enactment, "that so far as the tide
ebbs and flows the ownership of the soil to low-water
mark was in the proprietor of the adjacent bank." And as
it was not claimed for this act that it operated as a grant of
the tide lands to the bank owner, we presumed that *Bowlby*
v. *Shively* was decisive of the point, and we still adhere to
that opinion. But now, upon the petition for rehearing,
it is urged that the act of October eleventh, eighteen
hundred and sixty-two, operated as a grant by the State
of Oregon to the proprietors of the adjacent bank. This
is an important advance upon the doctrine as formerly
stated and maintained. There exist three good and suffi-
cient reasons why this statute should not now be con-
strued as a grant:—

1. It is apparent from the law itself that the legisla-
ture did not intend it to operate as a grant. It is found in
an act entitled "An act to provide a Code of Civil Proced-
ure," and comes under the title of "Evidence in particular
cases," and purports to lay down rules "for construing
the descriptive part of a conveyance of real property,
when the construction is doubtful, and there are no other
sufficient circumstances to determine it." No words of
grant are used or employed, and nothing appears upon
the face of the statute to signify such an intent by the
legislature. The object was, as the statute indicates, to
provide rules for construing the descriptive part of con-
veyances. When tide water is made the boundary the
statute provides that "the rights of the grantor to low-
water mark are included in the conveyance." If a grantor,

being a bank owner, has any rights to the soil beneath the ebb and flow of the tide, such as he has would pass under a deed making tide water the boundary, because the courts would, under the statute, construe his grant as running to low-water mark; if he is without any such rights, however, then none can pass, as he could not convey more than he has. So, if the right was in the state, it was surely not intended by the legislature that a conveyance by a private individual making tide water the boundary would pass such right or title out of the state to the grantee. The latter clause of subdivision 5, to wit, "and also the right of the state between high and low-water mark," can therefore have no bearing in the construction of the description of private conveyances, and just why it was added is not now apparent, unless it was to govern where the state makes a conveyance making tide water the boundary. One thing is certain, the clause does not operate as a grant, and was never so intended.

2. The legislature has treated all tide lands as belonging to the state, and subject to its disposition and control, but in subordination to the rights of navigation and commerce. On October seventeenth, eighteen hundred and sixty-two, at the same session of the legislature at which the act to provide a Code of Civil Procedure was passed, another act was passed authorizing "the owners of land lying upon a navigable stream or other like water to build wharves into such stream or other water beyond the line of low-water mark," which is alluded to by counsel; but this act seems to have no particular bearing upon the question at issue. But by the act of eighteen hundred and seventy-two, (Laws, 1872, page 129,) and subsequent acts amendatory thereof, the legislature has by direct enactment provided for the sale and disposal by the state of all tide lands within her boundary, thereby assuming and exercising proprietary control over them. Since that time

the legislature has by the act of October twenty-fourth, eighteen hundred and seventy-five, directly granted to the Willamette Valley and Coast Railroad Company all the tide and marsh lands in Benton County, and the state has by deed conveyed a large amount of her tide lands to a great number of private individuals who, together with their grantees, are now holding by virtue of the title thus deraigned. So we find that by legislative intendment all tide lands belong to the state, and the policy has been and is now to convey them to the purchasers, subject to the paramount rights of navagation and commerce, thus placing upon said act of eighteen hundred and sixty-two a legislative construction in harmony with what section 855, subdivision 5, purports to be, simply a rule of evidence by which to determine the descriptive parts of conveyances where the construction is doubtful, and therefore not a grant.

3.   The courts of the state have treated the several acts of the legislature concerning tide lands as compatible with the state's ownership thereof, and have repeatedly upheld, sustained, and confirmed the grants and deeds of the state to such lands, until now it has become settled law that the state was primarily the owner of these lands, and had good right to convey and dispose of them.   See *Hinman* v. *Warren,* 6 Or. 411; *Parker* v. *Taylor,* 7 Or. 446; *Parker* v. *Rogers,* 8 Or. 183, and *Bowlby* v. *Shively,* 22 Or. 410 (30 Pac. 154, 14 Sup. Ct. 548).   True, in all the reported cases no reference is made to section 855 of the Code of Civil Procedure, and no attempt has ever been made to construe it.   This fact in itself is a strong argument that no one ever considered said subdivision 5 as constituting a grant, when, if so considered, it was of such vital and vast importance to tide land occupants.   It has now come to this, that the several acts of the legislature referred to, the legislative construction placed upon them com-

patible with the theory of the state's ownership, and the adjudications of this court touching them, have all tended to and have now indubitably established a fixed rule of property concerning these lands, which to overthrow would unsettle large vested interests, and destroy many valuable titles. Courts are always careful of vested rights, and will never disturb them unless there are good and ample reasons for so doing. For these and other reasons which might be assigned the motion for a rehearing is overruled.     AFFIRMED.