Argued September 11, affirmed October 4, 1961

# WILSON *v.* PARENT
### 365 P. 2d 72

*Norman N. Griffith,* Portland, argued the cause and filed a brief for appellant.

No appearance and no brief filed for respondent.

Before McAllister, Chief Justice, and Sloan, O'Connell, Goodwin and Brand, Justices.

BRAND, J.

This is a suit in equity by the plaintiff Delia V. Wilson against the defendant Arthur C. Parent, her son-in-law. It is alleged that the defendant was guilty of creating a nuisance by words and gestures, and plaintiff seeks an injunction restraining their repetition. The answer is in substance a general denial. After hearing on the merits, the trial court entered a decree denying any relief to the plaintiff and providing that neither party should recover costs. The plaintiff appeals.

It is alleged in the complaint that the plaintiff was and is the owner of a dower interest in certain real property therein described. Plaintiff alleges that she resides with her family on the property described and

that the property is in a residential district. She then sets forth the location of the defendant's residence, which adjoins her property on the rear. It is further alleged that the "Defendant has maintained and is maintaining a nuisance in the vicinity of plaintiff's said residence in that for many months prior hereto, defendant has from time to time while on the public streets, and otherwise, made vile and obscene gestures toward plaintiff and directed vile, obscene and profane language at her, * * *." The complaint then enumerates six alleged acts of the defendant. They may be briefly summarized as follows: The leaving of garbage on the ramp to plaintiff's garage; the use on three occasions of vile and obscene language and gestures directed at plaintiff by the defendant while plaintiff was in her house or on the property, defendant being in Northwest Third Street adjacent to property occupied by plaintiff; one other like occasion with like conduct by the defendant standing on Northwest Third Street, the location of plaintiff not specified, and one occasion on which obscene words and conduct toward plaintiff occurred at the intersection of First and Twenty-Second Streets in the Linnton district "not far from plaintiff's house" when defendant abruptly drove his automobile at plaintiff. All six incidents are alleged to have occurred between March 14, 1960 and March 21 of the same year.

It is alleged that all of the six acts of misconduct were done publicly and were done within sight and hearing of the plaintiff and within sight of "any passers-by." There is no allegation that anyone else saw the alleged misconduct. It is next alleged that the specified acts and conduct on the defendant's part "greatly impair plaintiff's enjoyment of her said

real property described as 10254 N. W. 109th Avenue by causing her great mental anguish and humiliation and render said property unfit for a residence for her," and that unless the acts and conduct of the defendant are enjoined, irreparable harm will be done to the plaintiff "in that said acts and conduct of defendant will be repeated and will continue * * *." It is alleged that plaintiff has no plain, speedy or adequate remedy at law and that the "damage and injury to plaintiff's psychological well being is not capable of full and complete compensation in damages," wherefor plaintiff prays for temporary and permanent injunction restraining the defendant from such acts and conduct.

In support of the allegations of the complaint the plaintiff called her husband, Allingsworth Wilson, who testified, without contradiction, that he is the owner of Lots 1, 2 and 3, Block 4, in the town of Linnton, city of Portland, and that his wife has a dower interest therein and that both live on said premises. Mr. Wilson's property lies at the corner of Northwest 109th Avenue and Northwest Third Street, in Block 44. The defendant lives on Lots 9 and 10 in the same block, but at the corner of Northwest Third Street and 108th Avenue. Examination of the map (Exhibit 1) discloses that both houses abut upon Northwest Third Street on the easterly side thereof, the defendant's property being immediately to the south of that owned by plaintiff's husband. The home of the defendant's mother also abuts on Northwest Third Street and lies north and just across 109th Avenue from the Wilson property. Thus the property occupied by the plaintiff is sandwiched between that of the defendant to the south and that of defendant's mother to the north.

The evidence on which plaintiff bases her claim of nuisance is supported solely by the testimony of herself and her husband. It discloses that on three occasions in 1959 the defendant, standing on Third Street, at or near its intersection with 109th Avenue and adjacent to the Wilson property, made vile and obscene gestures directed at plaintiff. On one of these occasions the defendant called the plaintiff a prostitute. The gestures, according to the testimony, related to the sex act. On three occasions, in March 1960, the defendant directed vile and obscene gestures and language at the plaintiff while she was on the Wilson property, and on another occasion in March 1960 defendant repeated the same gestures. In addition to the instance which occurred in the sight and hearing of the plaintiff while she was on the Wilson property, she testified that on March 15, 1960, the defendant, without permission, left a box of garbage on the ramp of plaintiff's garage, which is in the street area of Northwest Third Street, and on the same day, the defendant drove his car at her in the intersection of First and Second Streets, about half a block from the Wilson home. The defendant's gestures were described as of two kinds, the one, a perpendicular finger movement, and the other, a gesture in the immediate vicinity of defendant's private parts, though not involving indecent exposure. We shall not soil the pages of the reports by describing in detail the language used by the defendant and directed at the plaintiff, as indicated by the testimony of the plaintiff, and corroborated on some occasions by that of her husband. Suffice it to say that the language was vile and obscene. A vivid imagination could scarcely conjure up words more filthy than those employed. Plaintiff testified that she could not con-

tinue to live on the premises under these conditions and that she suffered great emotional disturbance resulting from defendant's conduct.

The foregoing indicates the nature of the words and conduct on which plaintiff relies as establishing a nuisance, and concerning which she seeks, not damages, but an injunction. The foregoing does not, however, place the events in context.

The evidence discloses a long-standing feud between the plaintiff's husband and the defendant, resulting in reciprocal threats of violence. It also discloses a veritable Donny-brook between the plaintiff and the defendant's mother, when the one employed a paint brush and the other seized her opponent by the hair as a means of hostile propulsion. Another element in the context is found in the testimony of plaintiff's husband, speaking of his relationship with the plaintiff. We quote:

"Q (By Mr. Atchison) When did you state that you had gotten married to Mrs. Wilson?

"A April, 1957.

"Q Has she ever lived in that house before that date?

"A Yes.

"Q When did she live there?
"* * * * *

"The Witness: 1954.

"Q And you were not married at that time, were you?

"A No.

"Q How long did she live with you in your house at that time?

"A For about a year."

From the evidence on both sides we conclude that the quarrel involving the plaintiff and her husband

and the defendant and his mother has continued since the approximate date of the marriage of plaintiff's daughter to the defendant. We certainly cannot say that either party was without fault, but we do find that the evidence preponderates in favor of plaintiff's evidence concerning vile and obscene words and gestures, notwithstanding a clever explanation suggested by defendant. When asked if he was guilty of the described conduct, the defendant replied, "Not that I know of." Later he made a categorical denial.

It would seem reasonable at the outset to determine in what branch of the law the alleged facts fall and the rules applicable thereto.

As said in *Martin et ux v. Reynolds Metals Co.*, 221 Or 86, 90, 342 P2d 790:

> "Trespass and private nuisance are separate fields of tort liability relating to actionable interference with the possession of land. They may be distinguished by comparing the interest invaded; an actionable invasion of a possessor's interest in the exclusive possession of land is a trespass; an actionable invasion of a possessor's interest in the use and enjoyment of his land is a nuisance." Citing 4 Restatement, Torts 224, Intro. Note Chapter 40.

In that case the statute of limitations was involved and it became necessary to determine whether the cause of action sounded in trespass or case, the limitation for the former being six years and the latter two years. Of course, the statute does not determine the nature of the case. The legal classification of the case determines the applicability of the statute. However, the statute, whether actually involved in a given litigation or not, does indicate a legislative recognition that these are two separate and distinct causes

of action which may result in divergent results depending on the judicially determined nature of the case.

Confusion worse confounded prevails generally in the field of nuisance law. Prosser, Law of Torts, 2d ed, 389. This court has held that "a private nuisance is anything done to the hurt, annoyance or detriment of the lands or hereditaments of another and not amounting to a trespass," thereby recognizing the obligation to distinguish between the two. *State ex rel Rudd v. Ringold,* 102 Or 401, 404, 202 P 734; *Adams v. City of Toledo,* 163 Or 185, 192, 96 P2d 1078. And see, *Amphitheaters, Inc. v. Portland Meadows,* 184 Or 336, 198 P2d 847, wherein an action for damages caused by the casting of light upon the screen of a drive-in theater was treated as one sounding in nuisance, not trespass, while in the *Reynolds Metals* case the casting of fluoride compounds in the form of gases and particulates upon plaintiffs' property was held to be a trespass to land.

The judiciary, though not composed of atomic scientists, fully recognize that dust, smoke, invisible gas, light and sound, and atomic fallout, are propelled over and across the lands of another and sometimes rest thereon, but it seems reasonably obvious that the ether waves moving from the hands of the defendant to the eyes of plaintiff and the sound waves from his vocal chords to her ears do not constitute trespass to land, even though the damage caused by them be far more than de minimis.

■ It appears unnecessary at this time to elaborate further and we hold that the pending case is to be tested by the law of nuisance, not of trespass.

We now consider whether plaintiff is entitled to injunctive relief under the pleadings and proof.

■ Plaintiff alleges that she is the owner of a dower interest in the property described. The undisputed evidence is that her husband is the owner of the land. We know him to be alive, for he was the first witness. He testified that the land in question "is in the dower interest of his wife." We therefore know that he is the owner and in possession, and being alive, his wife is not vested with a dower interest, but at most has an inchoate claim, which is no more than a wife's expectation of a vested right of dower if she lives to be her husband's widow. See Black's Law Dictionary, 4th ed., 904; *Smith v. Shaw,* 150 Mass 297, 22 NE 924; *Auerbach v. Chase Manhattan Bank,* 296 NYS 487, 251 App Div 543.

The authorities demonstrate that the sole right to sue for private nuisance or injury to the use and enjoyment of the property was in her husband.

In *Kavanagh v. Barber,* 131 NY 211, 15 LRA 689, the wife of the plaintiff was the owner of real property. The plaintiff husband brought an action to restrain the operation by the defendant of an asphalt manufactory, alleged to be a nuisance. The fumes from the plant caused damage to the plaintiff husband by reason of personal discomfort to which he was subjected in occupation of the house. His wife was also rendered sick thereby. Obviously the manufactory was a private nuisance. It was held that occupation and possession followed the legal title and there being nothing to show that the wife as possessor had turned the possession over to the husband, she was to be treated as the possessor and the husband was therefore not entitled to bring the suit. Speaking of the judgment of the lower court, the New York Court of Appeals said:

"* * * The judgment in this case adjudges

that the husband also can maintain an action for the interference with his enjoyment of the premises. The principle upon which the judgment proceeds, if sustained, will greatly extend the class of actionable nuisances. We have found no case where a private action has been maintained for corruption of the air by offensive odors, except by the plaintiff who was the owner of, or had some legal interest, as lessee or otherwise, in, land, the enjoyment of which was affected by the nuisance. The cases are numerous of actions on the case for nuisance created by a noxious trade, producing offensive and noisome odors, smoke, or noises, but from the case of Morely v. Pragnel, Cro. Car. 510, down, they have been brought and maintained (so far as we can discover) by the owner or lessee of the realty affected by them. See Wood, Nuisances, p. 577. We perceive no legal distinction between the plaintiff's situation and that of a lodger or guest in the house, or why, if the plaintiff can maintain an action, each member of the household cannot maintain one likewise for her or his separate injury of the same kind. The plaintiff's situation appeals more strongly, perhaps, than the others for an extension of the rule as heretofore understood. But there was a public remedy open to him by a public prosecution, and we think the public interests would not be subserved by opening the door to actions of this character, where the claimant has no property right to be protected from infringement. The language of Chief Justice Shaw in Quincy Canal Proprs. v. Newcomb, 7 Met. 276, is appropriate here: 'He cannot have an action, because it would lead to such a multiplicity of suits as to be itself an intolerable evil.' We think the judgment is erroneous.

"Judgment reversed and new trial granted."

And see, *Ellis v. Kansas City, St. Joseph and Council Bluffs R. R. Co.,* 63 Mo 131 (1876).

From the Restatement of Torts, Vol. 4, p 219, we quote:

> "It is obvious from the history of the action for private nuisance that the interests originally protected were interests in the use and enjoyment of land, including interests in the use and enjoyment of easements and profits. These interests continue to be the interests which are protected by actions for private nuisance. Where there is an invasion of these interests, the plaintiff may recover not only for harm arising from acts which affect the land itself and the comfortable enjoyment of it, but also for harm to members of his family and to his chattels.
>
> "* * * Private nuisance is properly an interference with the use and enjoyment of land, and is a wrong only to persons who have property rights or privileges in the land. * * *"

Again we quote:

> "Under Married Women's Acts, in so far as they abolish the common-law rights of a husband to his wife's personal property, there is no interest therein in him which by reason solely of the marriage relation will entitle him, as a general rule, to sue for loss or injury to her property. * * *" 26 Am Jur, Husband and Wife, § 125, p 751.

Supporting the rule as above stated, see *Carter v. Louisville & N. R. Co.*, 23 KLR 2000, 66 SW 1006; *Elliott v. Town of Mason*, 76 NH 229, 81 A 701; *Procknow v. Northwestern Iron Co.*, 156 Wis 408, 145 NW 1098; *Hughes v. City of Auburn*, 161 NY 96, 55 NE 389.

We are presently concerned with the question of who can sue for a private nuisance. The argument against a multiplicity of actions or actions by numerous persons for the same wrong is persuasive. Assuming that the acts of the defendant constituted a

private nuisance impairing the use and enjoyment of land, as alleged in the plaintiff's complaint, we hold that the cause accrued to the plaintiff's husband and not to the plaintiff. Our conclusion is in harmony with the apparent intent of the Oregon statute which deals with actions for damages for private nuisance and appears to limit the right to the owner or possessor.

> "Any person whose property or personal enjoyment thereof is affected by a private nuisance, may maintain an action at law for damages therefor. * * *" ORS 105.505.

Our next question is whether the defendant's conduct constituted a public nuisance and whether plaintiff's rights in that regard are any broader than in case of a private one.

A public nuisance may also constitute a private nuisance (*Bernard v. Willamette Box & Lumber Co.*, 64 Or 223, 129 P 1039) but the right of action or suit on account of a public nuisance is not limited solely to an owner of land who suffers injury to his use and enjoyment thereof. We quote:

> "Conduct that amounts to a public nuisance may at the same time be a private nuisance, and actionable as such. If a person's interest in the private use and enjoyment of his land is invaded by another's conduct so that the conduct would ordinarily be actionable by the person harmed, it is none the less actionable because the conduct is also a public nuisance. In such case the private action does not arise out of the fact that the nuisance is a public one.
>
> "A private action may, however, arise out of a public nuisance, and such must be distinguished from private nuisance. An individual cannot maintain an action for a public nuisance as such. But when an individual suffers special damage from

a public nuisance, he may maintain an action. This action for special damages arising out of the maintenance of a public nuisance is often confused with the action for private nuisance. The latter action has traditionally been restricted to invasions of interests in the use and enjoyment of land, and while a possessor of land is allowed to recover incidental damages for harms to his person or chattels in an action for private nuisance, the action is not available for the protection of those interests to a person who has no property rights or privileges in land. In cases where special damage has resulted from a public nuisance, invasions of interests of private persons other than interests in the use and enjoyment of land are actionable. Thus, a person who suffers bodily harm from an obstruction of a highway may maintain an action therefor, although no property rights or privileges of his have been invaded. So, also, one who suffers bodily harm as the result of the keeping of explosives in a locality where their presence is declared by statute, or found in a judicial proceeding, to be a public nuisance, may recover therefor, although he has no property rights or privileges. * * * " 4 Restatement of Torts, Ch 40, p 217.

■ While it is true that the right to sue for public nuisance is not limited to cases in which the wrongful conduct is also a private nuisance, it is also true that no one can sue to restrain a public nuisance unless he has sustained some damage or injury differing in kind from that suffered by the general public. *Luhrs v. Sturtevant,* 10 Or 170; *Blagen v. Smith,* 34 Or 394, 404, 56 P 292, 44 LRA 522; *Van Buskirk v. Bond,* 52 Or 234, 96 P 1103; *Duester v. Alvin,* 74 Or 544, 553, 145 P 660; *State ex rel Rudd v. Ringold,* 102 Or 401, 405, 202 P 734; *Columbia Fishermen's Union v. St. Helens,* 160 Or 654, 87 P2d 195; *Holland et al v. Grant County et al,* 208 Or 50, 298 P2d 832.

In the case at bar we hold that the plaintiff did suffer damage different in kind from that suffered by the general public. The hearing of obscene words directed at and characterizing plaintiff's conduct is a different harm from the mere hearing or seeing of vile words and acts in general by a member of the public not personally defamed thereby. Obscenity may constitute a nuisance (*Barnard v. Finkbeiner,* 62 App Div 319, 147 NYS 514) or a public nuisance (*Cartwright v. State,* 190 Tenn 543, 230 SW2d 995).

In *Amphitheaters, Inc. v. Portland Meadows,* supra, this court referred to cases involving illegal or immoral practices, most of them being public as distinct from private nuisances.

From Corpus Juris Secundum, we quote:

"The sounds made by the human voice or otherwise may be a nuisance when they constitute disorderly conduct. If the act is of such nature as tends to annoy all good citizens, it is sufficient if it does in fact annoy one. * * *

"The frequent use of profane and obscene language which may be heard by adjoining neighbors may constitute such injury as may warrant relief therefrom. The act of causing women to exhibit their naked persons to the public for a general admission fee constitutes a public nuisance. The singing of a ribald song in a loud and boisterous manner on the public streets in the presence of divers persons has been held to be a nuisance." 66 CJS, Nuisances, § 75, p 826.

See 66 CJS, Nuisances, § 79, p 833. See also, 39 Am Jur, Nuisances, § 102, p 866; *Commonwealth v. Oaks,* 113 Mass 8 (1873).

A statute of long standing provides that any person who wilfully and wrongfully commits an act which grossly disturbs the public peace or health or which

openly outrages the public decency and is injurious to public morals is punishable as provided therein. ORS 161.310. The statute has been construed in two Oregon cases. In *State v. Ayers,* 49 Or 61, 88 P 653, the defendant was charged with violation of the statute in that he wilfully committed an act which grossly disturbed the public peace, openly outraged public decency and injured public morals by selling pools on horse races. The court looked to the common law for a definition of the general words of the statute, found that the information charged a public nuisance, and affirmed the conviction.

In *State v. Waymire,* 52 Or 281, 97 P 46, this court by ROBERT S. BEAN, C. J., held that the statute ORS 161.310 was intended to cover offenses which were known at common law as indictable nuisances. Various acts such as lewdness, publishing of indecent material and the like are cited by way of illustrations. The court said:

> "The authorities cited show that the crime need not be a continuous one, but may consist of a single act, and that it need not affect the public at large, but only such as come in contact with it. * * *" 52 Or 281 at 286.

■ We think that the conduct of defendant, having taken place in a public street, constituted a public nuisance, and since plaintiff suffered special damage different in kind from that of the public, she had a right to bring an action for damages on account thereof. Whether she may sue for injunction in this case presents a different question.

■ There are many considerations which bring us to the conclusion that this is not a proper case for injunctive relief. The fact that the nuisance is also punishable as a crime, does not of itself oust the

equity court of jurisdiction, but it is a relevant circumstance to be considered in the exercise of judicial discretion. We venture the suggestion that in this case a single prosecution under ORS 161.310 would terminate the defendant's misconduct.

■ Again, it is obvious that the plaintiff's husband, who is equally involved in the quarrel, has a right of action at law for damages and may in a proper case obtain an order of abatement if his property is affected by a private nuisance. ORS 105.505. Another obstacle to the granting of injunctive relief is found in the inherent difficulties involved in enforcement. The court cannot maintain a police guard to patrol Northwest Third Street from defendant's residence northerly past the home of plaintiff's husband to that of defendant's mother. A violation could occur clandestinely at any time to the knowledge of no one but of plaintiff and her husband. The only enforcement could be by further litigation for contempt. A case directly in point is *Devine v. Devine,* 20 NJS 522 (1952), Chancery Div., wherein a wife sued for an injunction against her mother-in-law to restrain alienation of the affections of plaintiff's husband and the harassing of plaintiff with regard to her marital relations. The court said:

> "The extraordinary relief by injunction is not granted as a matter of course, but rather rests in the sound discretion of the court depending upon the facts and circumstances of each particular case. It is a remedy which should be exercised sparingly and cautiously and should be awarded only in clear cases reasonably free from doubt.
>
> "*     *     *     *     *
>
> "Equity has always regarded the problem of enforcing its judgment or decree as an important factor in determining whether injunctive relief is

appropriate. Such relief may be denied when, though otherwise appropriate, the judgment or decree would not be enforceable because of the inherent difficulties involved in the enforcement. 4 Restatement, Law of Torts, section 814(g), page 177, and section 943, page 721. And injunctions against torts perpetrated wholly or in part by means of spoken or written words present special difficulties of enforcement * * *."

Another statute, the enforcement of which would give the plaintiff a remedy is ORS 167.155, which provides that "Any person who is guilty of * * * any obscene, immoral, indecent, lewd or lascivious act, or who uses any profane, abusive or obscene language * * * near or upon any public highway, * * * shall be punished * * *." Other considerations have been deemed material in determining the propriety of injunctive relief from a nuisance. The injury or annoyance must be of a real and substantial character. 66 CJS, Nuisances, § 18, p 764. Injunction will be granted only on clear and convincing proof and in the sound discretion of the Court. *York et ux v. Stallings et al,* 217 Or 13, 341 P2d 529.

■ While it may not be an invariable rule, it is generally held that equity will not entertain jurisdiction to enjoin a nuisance where there is an adequate remedy at law. 66 CJS, Nuisances, § 116, p 884.

■ Finally, it is held that equitable relief will not be granted where the complainant is himself a wrongdoer in respect to the matter as to which he seeks relief.

The decree of the circuit court is affirmed.