Argued April 3, affirmed as modified June 12, petition for
rehearing denied and former opinion clarified July 15, motion
to withdraw clarification of opinion denied August 6, 1975

STATE ᴇx ʀᴇʟ STATE LAND BOARD,
*Respondent—Cross-Petitioner, v.* CORVALLIS
SAND AND GRAVEL COMPANY, *Petitioner.*

536 P2d 517
538 P2d 70

*Robert Mix,* Corvallis, argued the cause and filed the briefs for petitioner.

*Peter S. Herman,* Senior Counsel, Salem, argued the cause for respondent and cross-petitioner. With him on the briefs were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, HOWELL and BRYSON, Justices.

HOWELL, J.

This is an action in ejectment brought by the state pursuant to ORS 105.005 et seq. The state sought to obtain possession of the Willamette riverbed in the Corvallis area and damages for the reasonable value of the defendant's use of portions of that riverbed. The trial court awarded to the defendant certain portions of the riverbed within an area known as Fischer Cut and awarded other disputed portions to the state. Both parties appealed the judgment of the trial court to the Court of Appeals. The Court of Appeals affirmed the trial court's division of the parcels of land involved but reversed the trial court's award of damages for defendant's use of an area known as Parcel 3.

The history of this litigation and the numerous legal and factual issues are set forth in the opinion of the Court of Appeals, *Land Bd. v. Corvallis Sand & Gravel,* 18 Or App 524, 526 P2d 469 (1974). We agree with the Court of Appeals that there was substantial evidence in the record to support either the theory that Fischer Cut of the Willamette was formed by an "avulsive" process or by the "exception to the accretion rule" process as described by the federal court in *Commissioners v. United States,* 270 F 110, 113-14 (8th Cir 1920). We accepted defendant's petition for

review solely on the question concerning the length of the Fischer Cut area through which the Willamette River has coursed since a major flood in 1909.

The trial court made the following findings regarding Fischer Cut:

"1. Fischer Island from 1853 to 1909 was a peninsula-like formation around which the Willamette River coursed.

"2. By 1890 a clearly discernible overflow channel over the neck of the peninsula had developed known as Fischer Cut.

"* * * * * *.

"4. In January of 1906 the Fischer Cut Channel was in practically the same location as it was in 1890. It was estimated then that roughly one-quarter of the flow of the river was carried through Fischer Cut.

"* * * * * *.

"6. As a result of a flood of November 25, 1909, the river suddenly and with great force and violence converted Fischer Cut into the main channel of the river.

"7. The change was not gradual and imperceptible, but was a rapid and violent change of course, avulsive in character and constituted an avulsion.

"* * * * * *."

The trial court awarded Parcels 2A, 2B and 2C to the defendant. Those parcels lie between the lines of ordinary high water and encompass a riverbed distance of 1250 feet. In addition to this award, the trial court added to the length of riverbed awarded to the defendant the area downstream from the end of Parcels 2A, 2B and 2C to the confluence of the East River Channel and the Willamette River. This area came from part of Parcel 3 and was made, as the state con-

ceded at oral argument, on the basis of the statutory grants available to riparian owners between 1874 and 1878.

On appeal to this court, the state maintains that the trial court's findings regarding the length of Fischer Cut are correct. However, Corvallis Sand & Gravel contends that Fischer Cut is 3200 feet in length and that the trial court's finding of the length of the Cut is not supported by the evidence.

The evidence concerning the length of Fischer Cut consists of various documents and testimony. The asserted 1250-foot length of Fischer Cut coincides with the linear riverbed distance of Parcels 2A, 2B and 2C which the state first claimed in its 1969 complaint. The state argues that portions of the Fischer Cut area eroded away between 1890 and the 1909 flood. At trial, the state's expert witness, Ronald McReary, utilized a 1936 aerial photograph to point out an alleged cutbank on the upstream side of Parcels 2A and 2B, thus suggesting that the Cut was only 1250 feet long. The state also relied upon the testimony of one of its witnesses, Fred Fischer, who, as a boy, roamed through the area of Fischer Cut and who testified that the Willamette River moved east and took several acres of land with it. However, the state, in attempting to prove its erosion theory and the 1250-foot figure, relies on documentary evidence showing the area *after* the 1909 flood. Further, Mr. Fischer's testimony, taken as a whole, fails to explain whether the erosion he referred to occurred before or after 1909.

The evidence that Fischer Cut at the time of the 1909 flood was 3200 feet in length is substantial and highly persuasive. The trial court found that in 1906 Fischer Cut was in practically the same location as it was in 1890 and that until 1909 the Willamette River continued to flow around Fischer Island. In 1890 the U.S. Army Corps of Engineers carefully

mapped this stretch of the Willamette River, including the area of Fischer Cut. The 1890 Clapp map shows the existence of an overflow channel in the Fischer Island area. Both parties stated that this map was carefully drawn and prepared. The scale shows that the overflow channel from "upstream" to "downstream" points is approximately 3200 feet in length.

Later, in 1906, three years before the flood, Major G. W. Roessler of the Corps of Engineers sent Assistant Engineer David B. Ogden to examine the overflow channel in the area of what today is known as Fischer Island. Ogden's report to Roessler states, in pertinent part:

> "The channel in question is across the neck of a peninsula and is some 3200 feet long, while the distance around by the main river is two and one-quarter miles.

> "This channel has existed for a number of years as maps on file in this office show it in practically the same location in 1890, though the mouth of the channel was then closed by a gravel bar. The fall from its head to its foot is noted as about 8 feet. The approximate present location is shown in dotted lines on the sketch herewith."[1]

In addition, the state's witness stated on cross-examination:

> "* * * I would say the best evidence of it [the length of the eroded chute] is the distance shown on the map of 1890 which appears to be a very carefully prepared and well-engineered drawing and I would say that that is the length of the gully that eventually eroded into what is now the bed of the river."

---

[1] The distance on the sketch accompanying the engineer's report scales at slightly less than the 3200 feet stated in the body of the letter. However, the 1906 sketch did not purport to represent the exact length of the cutoff or overflow channel, only its approximate location.

We find that the best evidence of the length of Fischer Cut at the time of the 1909 flood is the 1890 map, which both parties agreed was carefully prepared and which shows Fischer Cut to be approximately 3200 feet in length.

It is difficult, based on the present record, to correlate the length of Fischer Cut in 1909 to the topography as it existed at the time of trial. We do find, however, that the length of Fischer Cut as it existed in 1909 at the time of the flood is best represented by the channel from point A to point B as shown on the 1890 map. We remand this action to the Court of Appeals with directions to remand to the trial court to correlate points A and B with the present topography of the area. Additional testimony may be taken if necessary. Also, on the remand, the trial court should modify or adjust any damages in accordance with our decision herein expanding the length of Fischer Cut. In all other respects the decision of the Court of Appeals is affirmed.

Affirmed as modified.


### ON PETITIONS FOR REHEARING

Upon respondent-cross-petitioner's petition for rehearing filed June 20, 1975, and petitioner's petition for rehearing filed July 3, 1975.

Lee Johnson, Attorney General, W. Michael Gillette, Solicitor General, and Peter S. Herman, Senior Counsel, Salem, for the respondent-cross-petitioner.

Robert Mix, Corvallis, for the petitioner.

PETITIONS FOR REHEARING DENIED; ORIGINAL OPINION CLARIFIED.

Tongue, J., did not participate in this decision.

HOWELL, J.

In our original opinion we emphasized that we accepted the defendant's petition for review of the decision of the Court of Appeals on the sole issue of the length of Fischer Cut as it existed at the time of the 1909 flood. We held that the length of Fischer Cut as it existed in 1909 was best represented by the channel from Point A to Point B as shown on the 1890 map and remanded the cause with directions to the trial court to correlate Points A and B with the present topography of the area and to modify or adjust any damages accordingly.

Both parties have filed petitions for rehearing. The defendant's petition raises no new matter and is denied. The petition of the plaintiff, the State of Oregon, expresses concern that our opinion could be interpreted to include as an award to defendant a portion of the riverbed in Parcel 3 which the plaintiff leased to the defendant in 1963 and which defendant has admitted in its pleadings that it had no ownership therein.[1]

To prevent any misunderstanding, our former opinion is clarified to the following extent: if correlating Points A and B of Fischer Cut results in any portion of that length falling within a portion of the riverbed to which the defendant has disclaimed ownership, then the ownership of plaintiff remains unaffected.

Both petitions for rehearing are denied.

---

[1] The plaintiff leased to defendant "That portion of the bed of the Willamette River owned and controlled by the State of Oregon *beginning at its confluence with East River (East Channel of the Willamette River) and extending downstream* 4,000 feet, all in Section 2, Township 12 South, Range 5 West, Willamette Meridian." (Emphasis supplied)

The defendant's amended answer alleged: "Defendant is the owner in fee simple of the property described in defendant's amended complaint, *except that defendant does not own that portion leased by plaintiff to defendant * * *.*" (Emphasis supplied)