Argued January 23, affirmed April 19, 1976

STATE LAND BOARD, *Respondent,*
*v.*
HEUKER et ux, *Appellants.*
(No. 402-132, CA 4707)
548 P2d 1323

*Douglas B. Gordon,* Portland, argued the cause for appellants. With him on the briefs were Davies, Biggs, Strayer, Stoel & Boley, Portland.

**W. Michael Gillette,** Solicitor General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

FORT, J.

## FORT, J.

Defendants own property along the Columbia River in Multnomah County. The state brought suit to enjoin them from obstructing public access to the strip of land which lies between the high and low water levels of the Columbia River adjacent to their upland property. The original issue was whether the public had rights of access to this strip of submersible land. At trial, however, the parties agreed that the public had such access rights but continued to litigate the question whether a permanent injunction should be issued ensuring that the access remained open. The parties also raised and litigated the question as to which of them owned the submersible strip adjacent to defendants' upland property. The trial court held that the state owned the submersible strip and issued the requested injunction.

In its decision the trial court assumed that the submersible strip was tideland as defendants maintained. Since the state did not challenge this assumption and produced no evidence to the contrary, we perforce accept this as true.

The state acquired ownership of tidelands and of submersible lands along navigable rivers at the time it became a state. *Bowlby v. Shively,* 22 Or 410, 415, 30 P 154 (1892), *aff'd* 152 US 1, 14 S Ct 548, 38 L Ed 331 (1894). This ownership consisted of two elements: a private property interest, the *jus privatum,* which the state could convey to private citizens; and the *jus publicum,* the right of the public to use tidelands and navigable waters for commerce and navigation, which the state holds as sovereign in trust for the people and which it cannot grant away. *State ex rel Thornton v. Hay,* 254 Or 584, 601-602, 462 P2d 671 (1969) (specially concurring opinion); *Corvallis & Eastern R. Co. v. Benson,* 61 Or 359, 369-70, 121 P 418 (1912). *Cf., Land Bd. v. Corvallis Sand & Gravel,* 18 Or App 524, 536-37, 540-41, 526 P2d 469 (1974), *aff'd as modified,* 272 Or 545, 536 P2d 517, 538 P2d 70 (1975). The issues

in this case are which party owns the private title to the tideland strip and whether a permanent injunction should issue to protect the public's right of access to the strip.

Both parties agree that the state has never explicitly conveyed out its title to the tideland. Ownership of the tideland depends on the possible application of rules of construction to the deed in which the state explicitly conveyed the adjacent upland to a private owner. In 1875 the state conveyed lots 1 and 2 of a specified township to one Ira Dodson. The deed described the property as 66.78 acres of school land, but did not mention the Columbia River or the tideland. No plat showing the location of lots 1 and 2 was in evidence at the trial,[1] but the parties agree that the lots were adjacent to the Columbia River and that the defendants' land is a portion of this original grant.

Defendants rely on ORS 93.310(5) to establish their title:

> "The following are the rules for construing the descriptive part of a conveyance of real property, when the construction is doubtful, and there are no other sufficient circumstances to determine it:
>
> "* * * * *
>
> "(5) When the tidewater is the boundary, the rights of the grantor to low water mark are included in the conveyance, and also the right of this state between high and low watermark."

This statute was passed in 1862. Oregon Code of Civil procedure, § 845 (1862). In *McAdam v. Smith*, 221 Or 48, 350 P2d 689 (1960), the Supreme Court held that this rule of construction applies when tidewater is the boundary of property, whether or not it is mentioned explicitly in the deed. 221 Or at 59-60.

██ The trial court in this case held that ORS 93.310(5) does not apply to construction of a deed in which the

---

[1] At trial the state offered such a plat into evidence to show the position of the lots in relation to the river and the acreage of the upland area. The plat was not admitted and no offer of proof was made. The state did not cross-appeal, so we do not consider this evidence.

state is the grantor. We find nothing in ORS 93.310 to prevent its application to the state. We disagree, however, with defendants' assertion that the last phrase, "and also the right of this state between high and low watermark" refers to the granting of the private rights held by the state since such a grant is included in the earlier portion of subsection (5). We conclude that the last phrase refers to the rights that the state holds for the public and means that in any conveyance of tidelands, the grantee takes subject to the *jus publicum.*

■ Determining that the rule of construction in ORS 93.310(5) does apply to the state acting in its *jus privatum* capacity is only the first step in determining whether it applied to the 1875 deed so as to effect a transfer of the tidelands in question from the state to Ira Dodson. By its terms, ORS 93.310 operates only when the construction of a deed description is doubtful and when there are insufficient other circumstances from which to determine the construction. In addition, ORS 93.310(5) is not in itself a grant of tidelands from the state. *Astoria Exchange Co. v. Shively,* 27 Or 104, 107, 39 P 398 (1895). Additional legislative authorization is required before the executive branch may convey state-owned tidelands. *Corvallis & Eastern R. Co. v. Benson,* supra; 5A Thompson, Real Property 1124, 1126, § 2720 (1957). *See Land Bd. v. Corvallis Sand & Gravel, supra,* 18 Or App at 562. For the rule of construction to effect a conveyance of these tidelands in 1875 there must have been independent legislative authorization for the transfer.

At the time of the 1875 conveyance the legislature had authorized the state to sell its tidelands. An Act of 1872 providing for the sale of tidelands on bays and harbors was amended in 1874 to include tidelands along rivers. Oregon General Laws 1872, pp 129-33; Oregon General Laws 1874, pp 76-79. The statute as amended[2] provided specific requirements for the con-

---

[2]Relevant portions of the 1872 Act are printed below, followed by por-

veyance: owners of uplands could apply to purchase adjacent tideland within three years of the Act, after which others could apply; sale was to be made by those who sold school lands; the upland applicant must prove

tions of the 1874 Act. These Acts were repealed in 1878 and were never collected in a code.

1872 Act:

*"Be it enacted by the Legislative Assembly of the State of Oregon:*

"SECTION 1. That the owner or owners of any land abutting or fronting upon or bounded by the shore of any bay, harbor or inlet, on the sea coast of this State, shall have the right to purchase from the State all the tide land belonging to the State, in front of such owner or owners; *Provided,* That if valuable improvements have been made upon any of the tide lands of this State before the title to the land on the shore shall have passed from the United States, the owner of such improvements shall have the exclusive right to purchase the lands so improved, extending to low water-mark, for a period of one year from the approval of this Act.

"SEC. 2. The officers of this State who now are or who may hereafter be authorized to dispose of the school lands belonging to this State, are authorized, empowered and directed to sell such tide lands, upon proper application to purchase by parties hereby authorized to purchase; and all such tide lands shall be sold and the money resulting from such sale shall be distributed in accordance with the laws of this State, which now are or may hereafter be in force respecting the sale of the school lands of this State; *Provided,* That in the certificates of sale and patents for such land the same shall be described as —— acres of tide land or land under water belonging to this State in front of the following described premises. (Here describe by legal subdivisions the lands in front of which said tide lands are located).

"SEC. 3. Every applicant for the purchase of tide land, under Section 1 of this Act, shall, with his application, present to the officer or officers who are or shall be authorized to sell such lands, the evidences of his title to land which abuts or fronts upon or is bounded by such tide lands, and before making such sale such officer or officers shall be satisfied that such applicant is the owner of such lands so fronting, abutting or bounded as aforesaid.

"SEC. 4. The value of such tide lands shall be appraised at a certain sum per acre of the same, and such appraisal shall not value such lands at less than $1.25 for each acre of such land; *Provided,* The Board having in charge the sale of said lands shall have power to set aside any appraisement on evidence taken of the true value of the same, and shall make another and true appraisement based on such evidence.

"SEC. 5. If any person or persons, who at the passage of this Act shall be entitled under Section 1 thereof to purchase any tide lands, shall not within twelve months from the passage of this Act make application to purchase such tide lands, or having made such applica-

his title to the uplands; an appraisal was required and a minimum price set; all applicants must have then paid for a survey by the county surveyor. There is no indication in the record that Ira Dodson or his succes-

tion, shall have failed to prosecute the same, as provided by law, then such lands shall be open to purchase by any other person who is a citizen and resident of the State of Oregon; *Provided,* That this Section shall not apply to any lands abutting or fronting on or bounded by the sea shore, which are owned by the United States * * *.

"* * * * *

"SEC. 7. All applicants to purchase lands under the provisions of this Act shall, at their own expense, cause the same to be surveyed by the County Surveyor of the county in which such lands are situated, such survey to conform to and connect with the surveys of the United States adjoining, as far as may be practicable, and the certificate of the County Surveyor, describing the lands applied for by metes and bounds and designating the quantity thereof, shall be forwarded under the certificate of appraisement to the officers of the State who are authorized to sell the same.

"* * * * *."

1874 Act:

*"Be it enacted by the Legislative Assembly of the State of Oregon:*

"SECTION 1. That Section 1 of an Act entitled 'An Act to provide for the sale of Tide and Overflowed Lands on the Sea Shore and Coast,' approved October 28, 1872, be so amended as to read as follows:

" 'Sec. 1. That the owner or owners of any land abutting or fronting upon or bounded by the shore of the Pacific Ocean, or of any bay, harbor or inlet of the same, and rivers and their bays, in which the tide ebbs and flows, within this State, shall have the right to purchase all the tide land belonging to this State in front of the lands so owned * * *.'

"SEC. 2. That Section 5 of said Act be amended so as to read as follows:

" 'Sec. 5. If any person or persons who, at the passage of the Act of which this is amendatory, were entitled to purchase any tide lands under the provisions of Section 1 thereof, shall not have applied for the same within three years from the passage of said Act, or having made such application shall have failed to prosecute the same as provided by law, then such land shall be open to purchase by any other person who is a citizen and resident of the State of Oregon; *Provided,* That when any application shall be made for the purchase of any such tide land by any person or persons other than the owner or owners of the land adjacent to such tide lands, or the purchaser or purchasers of such tide lands, from such owner of adjacent lands, or some previous owner thereof, notice shall be given by said Board to the owner or owners of such adjacent lands, and to any parties who are in possession of, or who shall have improved such tide lands in any manner, and such owner or

sors took any steps to purchase the adjacent tidelands under these statutes.

■ This legislation providing for the sale of tidelands is detailed and complete. It authorized conveyance of the tidelands only according to the procedure specified and not in any other way. A conveyance by the state is only valid if it is done with the proper authority. 6 Thompson, Real Property 315, § 2987 (1962). We hold that the Acts of 1872 and 1874 were insufficient to authorize conveyance of state-owned tidelands except by the procedures they described. They are not a general authorization which allows ORS 93.310(5) to effect a transfer.

■ There is a second basis for our holding that ORS 93.310(5) did not effect a conveyance in this case. The rules of construction of ORS 93.310 by its terms do not apply unless "the construction is doubtful, and there are no other sufficient circumstances to determine it." One such circumstance is the intent of the legislature stated in Section 4 of the 1874 Act:

"Inasmuch as the existing law does not authorize the

---

owners of such adjacent lands, or the person in possession of such tide lands by purchase from such owner of such adjacent lands, or any previous owner thereof, or who shall have improved the same, shall have sixty days after service of such notice to make application for the purchase of such tide lands, and such application shall have preference over all others, and in case any person to whom notice is hereby required to be given cannot, after due diligence, be found, notice may be given at the cost of the applicant by publication in the State paper for four successive weeks; and all applications to purchase tide lands by the owner of adjacent lands shall be accompanied by the affidavit of the applicant, setting forth the fact that such land is not held by any other person under a deed from said applicant, or any person under whom he holds; but this provision shall not apply to the tide lands abutting upon lands owned by the United States * * *.'

"SEC. 3. That the title to all tide lands heretofore sold, and for which conveyance have already been executed under the provisions of the Act to which this is amendatory, be and the same is hereby confirmed unto the purchasers thereof.

"SEC. 4. Inasmuch as the existing law does not authorize the sale of tide lands lying on the ocean beach and the rivers and bays thereof, this Act shall take effect and be in force from and after its approval by the Governor.

"* * * * *."

[ 144 ]

sale of tide lands lying on the ocean beach and the rivers and bays thereof, this Act shall take effect and be in force from and after its approval by the Governor." Oregon General Laws 1874, at 79.

This expressed understanding of the legislature that the Act of 1874 is the only authorization for conveyance of state-owned tidelands along rivers is of material aid in construing the state's deed to Ira Dodson. Unless he or his successors purchased the tidelands in accordance with that Act, title to the tidelands did not pass to him from the state. Since the terms of that Act are sufficient to construe the deed to Ira Dodson, the rule of construction in ORS 93.310(5) is not applied.

Defendants also cite *McAdam v. Smith, supra,* as establishing a common law rule of construction that a deed which conveys property to the tideland conveys to the low watermark. In reaching its conclusion the Supreme Court relied on rules concerning deeds to property adjacent to a street or to a nonnavigable stream. The facts in *McAdam* involved a private grantor, as did the common law rule it followed which applied to property adjacent to streams. We decline here to extend the rule of *McAdam* to cases in which the state is grantor.

Defendants also assert as error the trial court's decree enjoining defendants from obstructing fishermen or others of the public from using the submersible strip along the Columbia River. The issuance of an injunction lies within the sound discretion of the court. *Wilson v. Parent,* 228 Or 354, 369, 365 P2d 72 (1961); *State ex rel Johnson v. Int'l Harv.,* 25 Or App 9, 548 P2d 176, Sup Ct *review denied* (1976). We will not disturb the trial court's ruling here.

Affirmed.

**SCHWAB, C. J.,** dissenting.

A deed dated April 8, 1875, executed by the State of Oregon in favor of Ira Dodson, defendants' predecessor

in interest, conveyed title to two lots. The question in this case is whether this deed also conveyed title to tideland that all parties agree adjoins those two lots.

The opinion of the trial court and the majority opinion in this court both state or imply that: (1) had the 1875 conveyance to Dodson been from a private grantor, defendants would now have title to the adjoining tideland under the rules stated in *McAdam et ux v. Smith et al,* 221 Or 48, 350 P2d 689 (1960), *Fossi v. Myers,* 271 Or 611, 533 P2d 337 (1975), and ORS 93.310(5); but (2) the fact that the 1875 conveyance was from the state changes the result. I am unable to perceive any persuasive basis for this distinction producing a different result.

Oregon General Laws 1872, pp 129-33, is not relevant because it only applied to tideland at "the shore of any bay, harbor or inlet, on the sea coast of this State." Oregon General Laws 1874, pp 76-79, for the first time authorized sale of tidelands on "rivers * * * in which the tide ebbs and flows." Contrary to the majority's reasoning, it seems to me that this helps rather than hurts the defendants' claim to title.

Aside from the authorization to sell, the principal thrust of the 1872 and 1874 statutes was to give private owners of upland a right of first refusal regarding purchasing adjoining tideland. But until the 1875 conveyance to Dodson, the state, not a private party, was the owner of the upland adjoining the tideland, title to which is here disputed. For this additional reason, these statutes seem irrelevant to me.

Alternatively, if the 1872 and 1874 statutes are of any relevance, I have two further disagreements with the majority. First, the majority seems to hold that when there is noncompliance with statutes governing procedures for sale of state land, a good-faith purchaser does not acquire title. The majority cites no authority for such a harsh rule—and in the absence of controlling authority, I would reject such a rule on

the ground that it is grossly unfair. Second, assuming the validity of the majority's rule on procedural noncompliance, the question arises as to where the burden of proof lies. The majority seems to hold that it behooves the defendants to prove that the state as grantor and their predecessor in interest as grantee, in a more than 100-year-old transaction, complied with applicable statutory procedures. If such is the rule, every citizen whose chain of title includes a conveyance from the state, by deed valid on its face, can have his title defeated by being unable to produce evidence about the procedures followed at the time of the (possibly ancient) grant from the state.[1]

There are several policy issues lurking in this case. One is this: The greater the difference between the rules governing property transactions involving private parties and transactions involving the state, the more uncertainty is introduced into property transactions involving the state, which will ultimately manifest itself in the form of reduced marketability of state-owned property. All judges that have considered this case seem to agree that Dodson's 1875 deed would be construed differently if it were from a private grantor. *McAdam et ux v. Smith et al, supra.* I would apply the same rule to the state as grantor.

I respectfully dissent.

---

[1]Perhaps this is the evil ORS 273.900 was intended to eliminate:

"The titles to all tide lands within this state * * * which have been heretofore sold to purchasers by the State of Oregon * * * are hereby confirmed * * *."

*Cf., Van Dusen Inv. Co. v. Western Fishing Co.,* 63 Or 7, 124 P 677, 126 P 604 (1912).