Argued and submitted December 15, 1998, affirmed August 25, 1999

A. D. DORITY, Jr.,
Trustee of the A. D. Dority, Jr. Trust,
Theo M. Dority, Trustee of the Theo M. Dority Trust,
Arthur D. Dority, III, Diane M. Dority,
Deri C. Dority, Meri Lee Dority Clarke,
Mark McKay, Dean McKay,
Mark McKay Farms, Inc.,
an Oregon corporation,
and Dean McKay Farms, Inc.,
an Oregon corporation,
*Appellants,*

*v.*

Irene HILLER,
Trustee of the Irene Hiller Trust,
John Coleman, William Coleman,
Coleman Farms, Inc.,
an Oregon corporation,
and Fairfield Farms, Inc.,
an Oregon corporation,
*Respondents.*

(96C-11125; CA A99563)

986 P2d 636

Laura A. Schroeder argued the cause for appellants A. D. Dority, Jr., Theo M. Dority, Arthur D. Dority, III, Diane M. Dority, Deri C. Dority, Meri Lee Dority Clarke, Mark and Dean McKay, Mark McKay Farms, Inc., and Dean McKay Farms. With her on the briefs was Schroeder Law Offices.

A. Richard Vial argued the cause for respondents Irene Hiller, John Coleman, William Coleman, Coleman Farms, Inc., and Fairfield Farms, Inc. With him on the brief was Vial Fotheringham LLP.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,* and Armstrong, Judge.

EDMONDS, P. J.

---

* Deits, C. J., *vice* Warren, P. J., retired.

## EDMONDS, P. J.

Plaintiffs[1] brought this action to quiet title to real property and for damages on theories of trespass, private nuisance and public nuisance against defendants.[2] Defendants raised counterclaims seeking a declaration of a right to maintain an irrigation pipeline across plaintiffs' property. Defendants then moved for partial summary judgment against plaintiffs on the question of whether defendants possessed an irrevocable license for the use of plaintiffs' property for the pipeline. ORCP 47. The trial court granted defendants' motion and entered judgment in their favor. ORCP 67 B.[3] Plaintiffs appeal, ORS 19.205(2)(e), and we affirm.

This dispute concerns a pipeline running from a diversion point on the Willamette River across plaintiffs' property to defendants' adjoining farmland. The following facts are not disputed. In 1964, Milton Wolsborn owned plaintiffs' property. That year, having no direct access from their own property to the river, defendants applied for a permit from the Oregon Water Resources Department to take water from a point commencing on plaintiffs' property, which was approved. Defendants buried a steel pipeline from the edge of the river, across a corner of plaintiffs' field and to their property. They installed an electrical pole and box on plaintiffs' property and obtained electrical service in order to operate a pump that they placed at the river's edge. Defendants used the water to irrigate their crops.

In 1967, plaintiffs purchased Wolsborn's property. They were aware of the presence of the pipeline at that time. In 1971, plaintiffs applied for a permit to take water from the same diversion point described in defendants' permit. In

[1] The Dority family owns land adjoining the Hillers' land and the McKays are the Doritys' tenants. We refer to the Dority and McKay interests collectively as plaintiffs.

[2] The Coleman and Fairfield interests lease from the Hillers. We refer to all of those interests collectively as defendants.

[3] We ordered plaintiffs to show cause why their initial appeal should not be dismissed for lack of a final judgment. Plaintiffs responded by seeking leave under ORS 19.270(4) for the trial court to enter an appealable judgment. We granted leave, the trial court entered a final judgment, and plaintiffs filed an amended notice of appeal.

1975, defendants undertook to bury a plastic pipeline on plaintiffs' property in the same general location. When challenged by plaintiff, A. D. Dority, defendants explained that the plastic pipe was intended to replace the steel pipeline. Dority asked if they had an easement, and defendants replied that they had a written easement from Wolsborn.[4] Dority then gave defendants permission to install the plastic pipeline.

In 1994, plaintiffs and defendants began to quarrel over the use of the pipeline, and plaintiffs admit to disconnecting or cutting the pipeline on at least one occasion in 1994 and another in 1995. Those actions led to this litigation and to the partial summary judgment declaring that defendants have an irrevocable license across plaintiffs' property for their pipeline. The judgment requires plaintiffs to restore the connection and enjoins them from interfering with it.

Plaintiffs first assign error to the determination that defendants possess an irrevocable license across plaintiffs' land. On review of a summary judgment, we determine whether there exists any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law. ORCP 47 C. We review the record in the light most favorable to plaintiffs, the nonmoving parties. *Id.*

A license is an interest created in real property when a landowner consents to the use by another of the landowner's property in a way that would otherwise be wrongful. *Rouse v. Roy L. Houck Sons'*, 249 Or 655, 660, 439 P2d 856 (1968). An irrevocable license arises when the landowner's promise to allow a use of the land for an unlimited time induces the other party to make significant expenditures for permanent improvements, consistent with the use for which the consent was given. *Brown v. Eoff*, 271 Or 7, 11, 530 P2d 49 (1975). If the licensee proves by clear and convincing evidence that the consent was given and that the licensee reasonably and detrimentally relied on the consent, then the landowner is estopped from revoking the license. *See id.*

The affidavits from George Hiller, Irene Hiller and A. D. Dority provide the only information in the summary

---

[1] No written easement agreement has ever been found.

judgment record regarding the original consent to install the steel pipeline. George Hiller states:

> "Milton Wolsborn granted us a right to place a pump, electrical pole and box, and underground pipeline to transmit water from the Willamette River, across, under and upon the headlands of his property * * * provided his tenant, Nels Tribbett did not object.
>
> "* * * Nels Tribbett did not object; He asked that we notify him when we were completed with our work, so he could plant his crops."

Irene Hiller's affidavit contains essentially the same language. On the other hand, Dority's affidavit says, "I have spoken with Mr. Wolsborn, the previous owner, of my property concerning this matter. He specifically informed me that he did not give permission to Defendants to lay a pipeline across his property or give the Defendants an easement[.]" Defendants objected to the admissibility of Wolsborn's statement as hearsay. OEC 801 *et seq*. The trial court sustained the objection. On appeal, plaintiffs assign the trial court's ruling as error. The import of the issue is that, without the evidence about Wolsborn's statement from Dority's affidavit, the Hillers' averments that Wolsborn gave them permission for the pipeline are uncontroverted in the summary judgment evidentiary record.

■ ORCP 47 D provides that affidavits supporting or opposing a motion for summary judgment must be made on personal knowledge and shall set forth such facts as would be admissible in evidence. OEC 801(3) defines hearsay as: "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Because Dority offered Wolsborn's out-of-court statement to prove that Wolsborn did not give consent to defendants, or to prove the truth of the matter asserted, Dority's testimony about what Wolsborn told him is hearsay and inadmissible under OEC 801. The trial court did not err when it sustained defendants' objection on that ground.

■ Plaintiffs argue, for the first time on appeal, that Wolsborn's statement should have been admitted pursuant

to OEC 803(26), which permits a trial court to admit a hearsay statement not covered by a specific exception to OEC 801 when the declaration possesses the equivalent circumstantial guarantees of trustworthiness of other exceptions. OEC 803(26)(a)(B) requires that the hearsay statement must be "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts[.]" Even if an issue under ORCP 803(26) had been preserved in the trial court, *see* ORAP 5.45(2), the requirements of the rule are not met. Wolsborn was not deposed by either side and plaintiffs did not procure an affidavit from him nor argue that he was unavailable or that he refused to provide an affidavit. Under the circumstances, the trial court did not err in excluding from the summary judgment evidentiary record the portion of Dority's affidavit reporting Wolsborn's statements.

■ Next, plaintiffs argue that the portions of the Hillers' affidavits reciting Wolsborn's statements to them are hearsay and cannot be considered. However, plaintiffs failed to make that objection to the trial court. In the absence of any objection, we will consider the Hillers' affidavits as admissible evidence. *Knez Building Materials Co. v. Manikas*, 113 Or App 220, 222 n 2, 831 P2d 80 (1992). As a result, the summary judgment evidentiary record is uncontroverted that defendants received consent from Wolsborn to install an underground pipeline to convey water to defendants' property and to place an electrical pole and box on plaintiffs' property.

■■ Next, plaintiffs argue that defendants have failed to prove that they relied on Wolsborn's consent to their detriment. Plaintiffs concede that defendants placed electrical pumping equipment and buried an underground irrigation pipeline on their property. Also, the location of the pipeline required defendants to bury it under a county road. Plaintiffs further concede that at various times since 1964 defendants have entered plaintiffs' property to install and remove the pump and have used the pipeline to bring water from the river to irrigate their fields. However, they argue that "[d]efendants failed to show any specific amounts paid in reliance upon a permanent property interest." We are persuaded that the evidence that defendants installed a pipeline and

electrical service in reliance on Wolsborn's consent under the circumstances of this case suffices to carry their burden of proving the element of detrimental reliance.[5]

Next, plaintiffs argue that, even if an irrevocable license existed for the steel pipeline, defendants abandoned that license by burying the plastic pipeline in a different location and that plaintiffs' permission as to the plastic pipeline was conditioned on an agreement about shared use and the existence of a prior written easement agreement with Wolsborn. The record indicates that the steel pipeline was used exclusively by defendants from 1964 to 1971. Dority's affidavit states that in April 1971 he applied to the state for a water use permit, requesting the same point of diversion as defendants, and that, from that time, he began to share the use of the steel pipeline. Defendants contend that any shared use was permissive and was granted on an emergency basis only. Dority's affidavit also says: "Relying on Fred and Joe Hillers' misrepresentation that [they] had an easement, I acquiesced in the plastic pipeline's installation and use." Also, plaintiffs admit in their response to defendants' counterclaim that they gave permission to defendants to install the plastic pipeline. In light of that evidentiary record, we turn to the applicable legal principles.

■ In *Heisley et al. v. Eastman et al.*, 102 Or 137, 201 P 872 (1921), the court considered whether an oral license from an owner of land to the grantee to lay a drain across the owner's property became irrevocable when acted on by the grantee who made valuable improvements that would be lost if the license were terminated. The court distinguished between passive acquiescence to the improvements and giving express permission, holding that giving express permission sufficed to create an irrevocable license because permanent improvements were made in reliance on the permission. 102 Or at 157. Here, plaintiffs admit that they gave express

---

[5] Plaintiffs suggest that there is an issue of fact as to whether defendants' reliance was detrimental because defendants can obtain access to water from sources other than at the existing point of diversion. Even in light of that fact, we are aware of nothing in the case law that requires absolute necessity for an irrevocable license. *Cf. Rose et ux. v. Denn et ux.*, 188 Or 1, 22-26, 37-42, 212 P2d 1077, 213 P2d 810 (1950) (holding that "necessity" need not mean a *strict* necessity in the context of an implied easement).

permission for the installation of the plastic pipe. Their conduct constituted more than the mere passive acquiescence to defendants' conduct when they challenged defendants' right to bring the plastic pipeline and then ultimately consented.

Also, according to plaintiffs, defendants lost any benefit of Wolsborn's consent and the license when they misrepresented the existence of a written agreement with Wolsborn and installed a new pipe at a different location. Plaintiffs perceive defendants' actions to constitute an abandonment of the Wolsborn license and the creation of a new license to have been induced by a misrepresentation. However, the fact that no written agreement for a license exists does not vitiate its existence. *See David et al. v. Brokaw et al.*, 121 Or 591, 596-98, 256 Or 186 (1927). The agreement between Wolsborn and defendants to use Wolsborn's property to bury a pipeline to convey water and the reliance by defendants on that agreement are sufficient to establish an irrevocable license to use plaintiffs' property. While defendants' efforts to bury the plastic pipeline may demonstrate an intent to abandon their use of plaintiffs' land at the location of the steel pipeline, they do not show an intent to abandon the use of the servient estate granted to them by the irrevocable license.

In order to raise a genuine issue of material fact about an abandonment of the use of their property, plaintiffs must offer evidence that defendants either verbally expressed an intention to abandon or by their conduct demonstrated unequivocally an intent to make no future use of the license. *See Bernards et ux v. Link and Haynes*, 199 Or 579, 587-90, 248 P 341, 263 P 794 (1953) (discussing the elements of an abandonment of an easement). The only evidence is that, in 1975, defendants wanted to continue their use of plaintiff's property, albeit at a different location. Were this a dispute about *where* defendants could relocate their pipeline, a false oral representation about the existence of a written agreement and what the agreement said about location of the use could be material to the inducement of plaintiffs' consent to move the pipeline from one location to another. However, plaintiffs rely on defendants' representation that a written agreement existed as a ground to end defendants' use of their property at any location. Because defendants' irrevocable license to use plaintiff's land is not premised on the existence

of a written agreement with Wolsborn, it is a *non sequitur* to argue that the license was extinguished by defendants' failure to produce a written agreement or by a desire to relocate the pipeline. If plaintiffs had refused to consent to the relocation, then defendants could have insisted on the continued use of plaintiffs' land at the license's original location. *Cf. Curtis v. La Grande Water Co.,* 20 Or 34, 48-50, 23 P 808, 25 P 378 (1890) (holding that the relocation of a dam did not extinguish an irrevocable license), *overruled in part by Ewing v. Rhea,* 37 Or 583, 62 P 90 (1900).[6] Consequently, the evidence about defendant's representation of a written agreement does not raise a genuine issue of *material fact* regarding whether defendants have an irrevocable license that precludes summary judgment.

■ Alternatively, plaintiffs contend that their permission to install the plastic pipeline was conditioned on their being able to share the use of the pipeline. They argue that, even if defendants have an irrevocable license, "then a question of fact would arise as to whether Dority's consent was conditioned or in consideration for a shared use of the pipeline." Plaintiffs do not point to any evidence in the summary judgment evidentiary record supporting the claim that their permission to relocate the pipeline was conditioned on their being able to use it, and we can find none. We find only evidence that shared use occurred on occasion. That evidence does not give rise to an inference that the permission granted in 1975 was conditional or that plaintiffs acquired a property interest in the pipeline at that time. Plaintiffs' other arguments regarding whether an irrevocable license exists do not appear to have been raised to the trial court. Accordingly, we decline to discuss them, and the trial court did not err in its determination that defendants have an irrevocable license across plaintiffs' property.

Plaintiffs' remaining assignments of error address the relief that the trial court granted defendants. Plaintiffs' second assignment of error states:

---

[6] *See also Heisley,* 102 Or at 156-57 (explaining that "[n]othing that was said in *Curtis*[ ] was subsequently overruled, except the holding concerning passive acquiesence").

"The Circuit [Court] erred in ordering plaintiffs to reimburse defendants for the reasonable cost of restoring the pipeline when defendants never claimed entitlement to this relief in their pleadings."

However, the amended judgment on appeal provides that

"[p]laintiffs shall remove Dority's riser and restore the connection of the underground pipeline * * * at plaintiffs' expense."

As a result, plaintiffs' second assignment of error has been rendered moot by the amended judgment.

■ Finally, plaintiffs argue that defendants did not properly plead entitlement to injunctive relief or, alternatively, did not offer facts sufficient to justify injunctive relief. Defendants requested in their counterclaim for quieting title that "Plaintiffs should be enjoined from interfering with defendants' use and enjoyment of its pump and pipeline." In their prayer for relief, they reiterated that request. Defendants' counterclaims to quiet title are equitable claims, and trial courts historically have been empowered to fashion relief as will best accomplish the ends of justice. *See Dry Canyon Farms v. U.S. National Bank of Oregon*, 84 Or App 686, 694, 735 P2d 620 (1987) (Buttler, J., dissenting) (citing *Kerschner v. Smith*, 121 Or 469, 256 P 195 (1927)). Even if plaintiffs are correct that defendants' quiet title claims did not properly frame the request, the facts necessary to require plaintiffs to remove the riser and restore the pipeline connection were present in the evidentiary record, and defendants' counterclaims can be treated as though they were already amended. *See Finney v. Bransom*, 143 Or App 154, 162-64, 924 P2d 319 (1996), *aff'd in part and rev'd in part* 326 Or 472 (1998) (summarizing the relevant case law for deeming pleadings amended in a summary judgment context). Therefore, the trial court had authority under defendants' pleading and the state of the summary judgment evidentiary record to order injunctive relief.

■ The issuance of an injunction lies within the sound discretion of the trial court. *Wilson v. Parent*, 228 Or 354, 369-70, 365 P2d 72 (1961); *State Land Board v. Heuker*, 25 Or App 137, 145, 548 P2d 1323 (1976). The purpose of an injunction is to protect against future unlawful conduct. *Hay and*

*Hay*, 119 Or App 372, 374, 850 P2d 410 (1993). Here, the undisputed evidence is that plaintiffs interfered with defendants' use of the pipeline in two consecutive years. Defendants contend that they depend on the pipeline to irrigate their crops and that the difficulty in determining harm caused by deprivation of water and the possibility of multiple lawsuits makes compensatory damages an inadequate remedy. Further, defendants argue that because plaintiffs have other points of diversion from which to draw water from the river, any hardship caused by an injunction would be minimal. Plaintiffs respond that defendants have unclean hands because they terminated water delivery to plaintiffs through the plastic pipeline and therefore, are not entitled to the benefit of equitable relief. Plaintiffs' argument is not well taken, given our holding that defendants have an irrevocable license to the pipeline and are not required under the terms of the license to permit shared use. Under all of the above circumstances, we conclude that the trial court did not abuse its discretion in granting injunctive relief.

Plaintiffs' other arguments do not require discussion.

Affirmed.