Argued and submitted November 14, 2003, reversed and remanded on appeal and on cross-appeals April 7, 2004

## SPLINTERS, INC.,
a Maryland corporation,
*Appellant - Cross-Respondent,*

*v.*

## ANDERSEN/WEITZ,
a Joint Venture;
Travelers Casualty and Surety
Company of America,
a Connecticut corporation;
Reliance Insurance Company,
a New York corporation;
and Federal Insurance Company,
*Respondents - Cross-Appellants -
Second Cross-Respondents.*

## ANDERSEN/WEITZ,
a Joint Venture,
*Cross-Appellant - Second Cross-Respondent,*

*v.*

## EVERGREEN NATIONAL INDEMNITY COMPANY,
a foreign corporation,
*Cross-Respondent - Second Cross-Appellant.*

CCV0111286; A119417

87 P3d 689

Heather McNamee argued the cause for appellant - cross-respondent. With her on the briefs were Joseph A. Yazbeck and Yazbeck Cloran & Hanson, LLC.

Elizabeth Yeats argued the cause for respondents - cross-appellants. With her on the briefs was Seifer, Yeats, Mills & Zwierzynski, LLP.

Robert B. Coleman argued the cause for cross-respondent - second cross-appellant. With him on the briefs were Jan D. Sokol, and Stewart Sokol & Gray, LLC.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

EDMONDS, P. J.

**EDMONDS, P. J.**

This case involves disputes between a general contractor and a subcontractor regarding construction work done at Mary's Woods at Marylhurst, a continuing care retirement community. The trial court granted summary judgment on all claims, counterclaims, and third-party claims under ORCP 47 C, effectively dismissing every party's claim now on appeal to this court. Plaintiff/third-party defendant Splinters, Inc. (Splinters) and its surety, third-party defendant Evergreen National Indemnity Company (Evergreen), appeal from a summary judgment in favor of defendant/third-party plaintiff Andersen/Weitz, a Joint Venture (Andersen/Weitz), on Splinters's claims against Andersen/Weitz and its sureties.[1] Andersen/Weitz cross-appeals from summary judgment on its counterclaim against Splinters and its third-party claim against Evergreen. On appeal and on cross-appeals, we reverse and remand.

Andersen/Weitz was the general contractor on the construction project at Mary's Woods at Marylhurst. The project consisted of five separate medium-rise, multi-unit buildings, ranging from 64,236 square feet to 129,583 square feet, and 33 residential villas. On March 13, 2000, Splinters and Andersen/Weitz entered into a subcontract in which Splinters agreed to perform the trim and millwork for $1,099,032. Defendants Reliance Insurance Company (Reliance) and Federal Insurance Company (Federal) jointly posted a payment and performance bond on behalf of Andersen/Weitz for the project. Evergreen issued a payment and performance bond on behalf of Splinters. Splinters performed work on the contract through July 2001, but after disputes arose, it filed a lien against the project for $547,959 in July 2001. In August 2001, defendant Travelers Casualty and Surety Company of America (Travelers) posted a lien release bond with regard to Splinters' lien.

In November 2001, Splinters filed this action, asserting a claim for breach of contract against Andersen/Weitz and the right to foreclose against Travelers's bond, and it

---

[1] Our references to Andersen/Weitz in this opinion refer to the joint venture as an entity, not to the individual members of that joint venture.

sought to recover also against Reliance and Federal. Andersen/Weitz filed an answer to Splinters's complaint that alleged several affirmative defenses, including an allegation that Splinters was not continuously licensed by the Oregon Construction Contractors Board (CCB) pursuant to ORS 701.065 (1999) while performing its work on the project.[2] Andersen/Weitz also filed a counterclaim against Splinters alleging damages for breach of contract in the amount of $686,792 and a third-party complaint against Evergreen alleging the right to recover against Splinters's payment and performance bond.

Splinters moved for summary judgment on Andersen/ Weitz's counterclaim, arguing that the claim was barred by ORS 701.065(1) (1999) because Andersen/Weitz had not been continuously licensed as a joint venture throughout the performance of the work. Evergreen joined in the motion. In response to the motion, Andersen/Weitz asserted that it had both substantially and actually complied with the CCB licensing requirements. Andersen/Weitz also filed a cross-motion for summary judgment on Splinters's claims, relying on evidence that Splinters's license had been suspended as of April 3, 2001, and that the license had not been reinstated. Splinters responded that the CCB had not validly suspended the license. The trial court granted all parties' motions for summary judgment. On appeal, Splinters and Evergreen assign as error the trial court's decision to grant Andersen/ Weitz's summary judgment motion on Splinters's claims. On cross-appeal, Andersen/Weitz assigns as error the trial court's decision to grant Splinters and Evergreen's summary judgment motion on Andersen/Weitz's counterclaim and third-party claim.

A motion for summary judgment is properly granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. ORCP 47 C. We view the evidence and all reasonable inferences that the evidence may support in the light most favorable to the nonmoving party. *Powell v. Bunn*, 185 Or App 334, 338, 59 P3d 559 (2002), *rev den*, 336 Or 60 (2003).

---

[2] ORS 701.065 (1999) was amended by Or Laws 2003, chapter 675, section 71. Those amendments do not affect our analysis in this case.

We turn first to the trial court's grant of summary judgment in favor of Andersen/Weitz against Splinters. Andersen/Weitz alleged in its affirmative defense and summary judgment motion that Splinters was not continuously licensed pursuant to ORS 701.065 (1999) and that, as a result, its claims are barred. ORS 701.065(1) (1999) provided:

> "Except as provided in subsection (2) of this section, a contractor may not perfect a claim of a construction lien, or commence a claim with the Construction Contractors Board, in arbitration or in any court of this state for compensation for the performance of any work or for the breach of any contract for work that is subject to this chapter, unless the contractor had a valid license issued by the board:
>
> "(a)  At the time the contractor bid or entered into the contract for performance of the work; and
>
> "(b)  Continuously while performing the work for which compensation is sought."

Andersen/Weitz initially asserted that Splinters's claims were barred pursuant to ORS 701.065 (1999) because its license had been suspended on two occasions. At the hearing on the motions for summary judgments, the trial court concluded that Splinters's license had been suspended twice and stated that it would not evaluate the propriety of the CCB's decision as to why Splinters's license was suspended. However, Splinters presented evidence that its initial suspension was cured within the 90-day grace period provided under ORS 701.065(2) (1999), and Andersen/Weitz concedes that point on appeal. Andersen/Weitz's remaining contention is that the CCB suspended Splinters's license on April 3, 2001, because of its failure to provide the CCB with proof of general liability insurance. The threshold issue is whether there is a genuine issue of material fact about whether the CCB did in fact suspend Splinters's license on that date.

In support of its motion for summary judgment against Splinters, Andersen/Weitz relied on a letter from Kristie Patton, Program Manager for the Licensing Section of the CCB, listing a suspension of Splinters's license as of April 3, 2001, due to the lack of insurance coverage. It also submitted a printout from the CCB's website dated

March 29, 2002, indicating that Splinters's license was "inactive." In response, Splinters submitted what it asserts to be the complete CCB file on the issue. It also submitted a copy of a letter faxed to Patton, requesting a copy of Splinters's entire CCB file. The file contains no reference to a suspension of Splinters's license as of April 3, 2001.

■ On appeal, Andersen/Weitz objects to the admissibility of the CCB file on the ground that it is inadmissible hearsay and that it was not properly authenticated. However, Andersen/Weitz failed to object to the admissibility of the evidence below. The trial court was entitled to consider hearsay evidence that was not properly objected to, and we will consider that evidence on appeal. *See Dority v. Hiller*, 162 Or App 353, 359, 986 P2d 636 (1999) (hearsay is considered on review of a summary judgment motion in the absence of an objection). We will also consider evidence on appeal where the party opposing its admissibility on the basis that it was not properly authenticated failed to preserve the error for review by a timely objection below. *See State v. Anderson*, 15 Or App 607, 612, 517 P2d 339 (1973), *rev den* (1974) (alleged lack of proper authentication of records of convictions could not be reviewed where it had not been preserved by timely objection).

■ In general, ORS 701.135(1) (1999) required the CCB to provide notice and an opportunity for a hearing before revoking, suspending, or refusing to issue a license.[3] There is no evidence in the record that demonstrates that the CCB expressly notified Splinters that it intended to suspend its

---

[3] An exception to the general requirement of notice and an opportunity for a hearing exists when the administrator finds a serious danger to the public welfare. ORS 701.135(2) (1999). Under ORS 701.135(2)(a) (1999), the CCB must set forth specific reasons for such findings prior to suspension. There is no evidence in the summary judgment record that the administrator acted pursuant to that exception.

In 1999, ORS chapter 701 was amended to replace the word "registration" with the word "license." Or Laws, ch 402, §§ 1-43 (1999). The amendments became operative July 1, 2000. Before the effective date of the amendments, contractors were required to be *registered* with the CCB rather than *licensed*. We interpret those terms to be interchangeable and for clarity, use the word "license" throughout this opinion. ORS 701.135 (1997) was amended by Or Laws 1999, chapter 344, section 4; chapter 402, section 28c; and chapter 689, section 10; and Or Laws 2001, chapter 160, section 3; chapter 196, section 9; and chapter 850, section 6. Those amendments do not affect our analysis in this case.

license for lack of liability insurance coverage. Nonetheless, Andersen/Weitz relies on the presumption that an "[o]fficial duty has been regularly performed." OEC 311. It asserts that the evidence of Patton's letter and of the listing on the CCB's website, when considered with the presumption, demonstrate conclusively that Splinters's license was suspended. Assuming without deciding that the basic facts giving rise to the presumption of OEC 311 exist in this case, the presumption is disputable. That means that, when there is evidence opposing the presumption, a trier of fact must weigh the evidence, with the burden being on the party against whom the presumption is directed to prove the nonexistence of the presumed fact by the preponderance of the evidence. OEC 308. Here, there is evidence that Splinters in fact had the required general liability insurance. In addition, the CCB file contains no record of the second suspension. We conclude that the summary judgment record would permit a trier of fact to infer that no notice of suspension and/or suspension occurred and thus that Splinters had carried its burden. Viewed in the light most favorable to Splinters, there is a genuine issue of material fact as to whether the CCB suspended Splinters's license on April 3, 2001, and summary judgment was therefore precluded.[4]

We turn to Andersen/Weitz's cross-appeal of the summary judgment granted to Splinters and Evergreen on Andersen/Weitz's counterclaim and third-party claim. Splinters and Evergreen alleged that Andersen/Weitz failed to be continuously licensed as a joint venture in compliance with the statutory licensing requirements and that its claims are barred by ORS 701.065(1) (1999). Andersen/Weitz responded in the trial court and argues here that it both actually and substantially complied with ORS 701.065(1) (1999), contending that it was licensed pursuant to ORS 701.055(1) (1999). Alternatively, it argues that it satisfied the exception provided by ORS 701.065(2) (1999).

We first address whether ORS 701.055(1) (1999) required Andersen/Weitz to obtain a license discrete from its

---

[4] Evergreen's cross-appeal is derivative of Splinters's appeal. Because we decide Splinters's appeal in favor of Splinters, we also decide Evergreen's cross-appeal in favor of Evergreen.

members in order to assert its claims against Splinters and Evergreen.[5] Specifically, ORS 701.055(1) (1999) provided that

> "A person shall not undertake, offer to undertake or submit a bid to do work as a contractor unless that person has a current, valid license issued by the Construction Contractors Board. A partnership, corporation or *joint venture may do such work, offer to undertake such work or submit a bid to do such work* only if that partnership, corporation or joint venture is licensed under this chapter. A partnership or joint venture shall be deemed licensed *for the purpose of offering to undertake work as a contractor on a nonresidential structure if any one of the partners or joint venturers whose name appears in the name under which the partnership or joint venture does business is licensed under this chapter.*"

(Emphasis added.) Thus, ORS 701.055(1) (1999) imposed two conditions in order for a joint venture to "perfect a claim of a construction lien, or commence a claim with the [CCB], in arbitration or in any court" under ORS 701.065(1) (1999). One of the joint venturers must have had a valid license issued by the CCB at the time that the joint venture "bid or entered into the contract for performance of the work[,]" ORS 701.065(1)(a) (1999), and the joint venture itself must have been licensed at the time that it performed the work, ORS 701.055(1) (1999).

■ Andersen/Weitz commenced work on the project no later than August 1999. The CCB did not issue a license to Andersen/Weitz as a joint venture until February 2001. Andersen/Weitz contends, however, that, because each member of the joint venture was licensed, the joint venture should be deemed licensed as a matter of law. However, that argument is contrary to the express language of the statute. In

---

[5] As noted above, in 1999, ORS chapter 701 was amended to replace the term "registration" with "license." Or Laws, ch 402, §§ 1-43 (1999). The amendments became operative July 1, 2000. The facts in the record reveal that at the time that Andersen/Weitz began work on the project, the 1997 version of ORS 701.055 was in effect. The 1999 version became operative during Andersen/Weitz's performance on the project. We cite to the 1999 version, which, for all practical purposes, is the same as the 1997 version. ORS 701.055 was amended by Or Laws 2001, chapter 196, section 4; and chapter 197, section 11. Those amendments do not affect our analysis in this case.

construing the meaning of a statute, we are not authorized to "insert what has been omitted, or to omit what has been inserted[.]" ORS 174.010. Thus, under ORS 701.055(1) (1999), Andersen/Weitz was required to be licensed as a joint venture no later than August 1999. Once the performance of its bid began, ORS 701.065(1) (1999) required it to obtain a separate license in order to obtain a judicial remedy for the work it performed. Andersen/Weitz, the joint venture, did not have such a license until February 2001, and we therefore reject its argument that it should be deemed licensed because its members were licensed.

We turn to Andersen/Weitz's second argument, in which it contends that its claims are not barred because it qualifies under a statutory exception to ORS 701.055 (1999) and to ORS 701.065(1) (1999), as expressed in ORS 701.065(2) (1999). That statute provided that the bar of ORS 701.065(1) (1999) did not apply if the court determined that:

"(a)   The contractor either did not have a valid license at any time required under subsection (1) of this section, or had an initial issuance thereof, and:

"(A)   The contractor was not aware of the requirement that the contractor be licensed; and the contractor submitted a completed application for a license within a number of days established by the board, but not more than 90 days, of the date the contractor became aware of the requirement;

"(B)   At the time the contractor perfected a claim of a construction lien or commenced any other claim subject to the provisions of subsection (1) of this section, the contractor was licensed by the board; and

"(C)   Enforcement of the provisions of subsection (1) of this section would result in substantial injustice to the contractor[.]"

ORS 701.065(2) (1999).

According to its evidence, Andersen/Weitz was told by a CCB representative before it undertook to perform its contract that it did not need a separate license for the joint

venture as long as at least one of the individual joint venturers was already licensed. Andersen/Weitz also presented evidence that, within 90 days of receiving advice from its counsel that it should pursue a license for the joint venture, it did so. It also presented evidence that it was licensed at the time that it filed its counterclaim and third-party claim, and it argues, based on those facts, that substantial injustice would result if its claims were deemed barred because of its reliance on the advice of the agency representative. Splinters and Evergreen respond that they presented evidence that Andersen/Weitz was aware of the requirements at the outset of the project, that no reasonable juror could determine that Andersen/Weitz complied with the 90-day grace period to cure the deficiency, and that substantial injustice would not result if Andersen/Weitz's claims were barred under those circumstances. We consider each of those arguments in the following paragraphs, observing that, in order to defeat Splinters's summary judgment motion, Andersen/Weitz must either raise genuine issues of material fact or prevail as a matter of law as to all the requirements imposed by the exception to the licensing requirement. *See* ORCP 47 C ("[t]he adverse party has the burden of producing evidence on any issue raised in the motion as to which the adverse party would have the burden of persuasion at trial").

Our analysis of the summary judgment evidentiary record under ORS 701.065(1) and (2) (1999) is informed by our decision in *Alza Corp. v. Lehman Development Corp.*, 162 Or App 128, 986 P2d 59 (1999), in which we considered an earlier version of the statute.[6] In *Alza*, we held that the text and context of the statute "require a legal determination by the trial court of the availability of a defense under ORS 701.065(1) [(1995)] * * *." *Id.* at 132. However, the determination of whether the contractor was unaware of the

---

[6] The statute at issue in *Alza*, ORS 701.065(2) (1995), provided:

"If the court determines that the contractor was not aware of the requirement that the contractor be registered, a court may choose not to apply subsection (1) of this section if the court finds that to do so would result in a substantial injustice to the unregistered contractor."

ORS 701.065(2) was subsequently amended to provide a mechanism by which contractors could retroactively cure ORS 701.065(1) licensing deficiencies within 90 days after becoming aware of the requirements. Or Laws 1997, ch 818, § 3.

registration requirement is a "necessary factual predicate" to that legal conclusion. *Id.* In the same way, under ORS 701.065(2) (1999), a factual determination of whether Andersen/Weitz was unaware of the licensing requirement and whether the contractor applied for a license within 90 days of becoming aware of the requirement is a necessary factual predicate to the legal determination of whether its claims are barred.

■      We begin with the requirement that the contractor was not "aware of the requirement that the contractor be licensed[.]" The ordinary meaning of the word "aware" in the context of the statute refers to a mental state, *i.e.*, to be "marked by realization, perception, or knowledge." *Webster's Third New Int'l Dictionary* 152 (unabridged ed 1993). In this case, the parties offered conflicting evidence on whether Andersen/Weitz knew of the licensing requirement when it commenced performance of the work. Splinters and Evergreen presented evidence that the members of the joint venture, Andersen Construction Company, Inc. (Andersen) and The Weitz Company, Inc. (Weitz), are large, full-service contractors with multimillion dollar operations throughout the United States. For example, Weitz has been ranked by Forbes Magazine as the 472nd largest private company on its list of America's 500 Largest Private Companies. Splinters contends that, because both Andersen and Weitz are large, experienced, and long-standing companies, and because the licensing requirement is clear on the face of the statute, and because those entities, in fact, consulted the CCB regarding the licensing requirement, they must have known of the licensing requirement.

In response, Andersen/Weitz offered testimony by William Eckhardt, Chief Financial Officer of Andersen. He asserted that he called the CCB in order to inquire about the need for a license before entering into the subcontract with Splinters. He said that a CCB representative told him that "the joint venture did not need to be separately licensed to perform the contract as long as at least one of the joint venture partners was licensed." Andersen/Weitz asserts that, in reliance on that representation, it did not pursue a license for the joint venture.

■ ■     Ordinarily, the plain meaning of a statute imports knowledge of its requirement. In ORS 701.065(1) (1999), however, the legislature has created an exception to the licensing requirement that focuses on the actual knowledge of the contractor and not on the constructive knowledge imputed by the statute. In this case, Andersen/Weitz avers that it was misinformed as to the applicability of the requirement to it by a representative of the agency charged with the enforcement of the licensing requirement. If a trier of fact found that asserted fact to be true, it is reasonably inferable that Andersen/Weitz had the perception that no licensing requirement existed as long as both members of the joint venture were licensed. We conclude that an issue of fact exists about whether Andersen/Weitz was aware of the licensing requirement.

Andersen/Weitz also submitted testimony by Eckhardt, based on which a factfinder could determine that, within 90 days of receiving advice from counsel that it should obtain a license, it cured its licensing deficiency with the CCB. As to the requirement that the contractor be licensed at the time that a claim on the contract is made, it is undisputed that, when Andersen/Weitz filed its counterclaim and third-party claim against Splinters and Evergreen, it had a valid contractor's license.

Finally, Andersen/Weitz asserts that it would be "substantially unjust" to apply ORS 701.065(1) (1999) to it under the circumstances. Evergreen counters that no substantial injustice would result in light of the fact that Oregon law does not generally allow for equitable estoppel when a party has relied on erroneous information from a governmental employee. *See, e.g., Wiggins v. Barrett & Associates, Inc.,* 295 Or 679, 669 P2d 1132 (1983). However, we do not perceive the issue as implicating the doctrine of equitable estoppel against a governmental agency. Although Andersen/Weitz relied on a representation of a government agency, the representation relied on was not made by Splinters, and Andersen/Weitz does not seek to have the agency estopped. Rather, the issue turns on what the legislature contemplated would constitute a "substantial injustice to the contractor." ORS 701.065(2)(a)(C) (1999).

When applied to varying factual circumstances, whether a result is unjust or unfair requires a subjective value judgment by the court making the decision. For instance, in *Coe v. McElligott*, 86 Or App 272, 275-76, 739 P2d 57 (1987), we addressed an earlier version of ORS 701.065(2) (1999), observing:

"A representative of the Builders Board [now the CCB] explained that subsection to the Senate committee which considered the change:

" '[Subsection] (2) in that section qualifies that by allowing the courts to decide if that is a substantial injustice to the builder not to be able to file a suit in court, for example if a homeowner who knows the law knowingly defrauded the builder out of their labor by hiring an unregistered builder. * * * The court, under this provision would be given the leeway to decide whether or not the builder was actually being defrauded of his labor.' Minutes, Senate Committee on Business and Consumer Affairs, June 22, 1983, p 7.

"There is no evidence that plaintiff has been defrauded. Plaintiff contends that the exception is not limited to cases of fraud. Assuming that he is correct, we find nothing in the evidence that could otherwise be the basis for a finding of substantial injustice. Plaintiff's reliance on the fact that defendants received a completed job is misplaced, and the fact that he was fined $674.44 by the Builders Board for violation of another statute is irrelevant. *Those facts cannot be said to work a substantial injustice*."

(Second set of brackets in original; some emphasis in original; additional emphasis added.)

■        In light of the above-quoted legislative history and the text and context of the statute itself, we derive several conclusions. First, it is clear that the legislature intended to delegate to courts the determination of whether a substantial injustice would occur within the limits of the statutory scheme itself. In other words, the legislature intended that courts give effect to the exception in ORS 701.065(2) (1999) without swallowing up the purpose of the licensing requirement.[7] Second, we understand the delegation to courts in

---

[7] The general policy that underlies ORS chapter 701 is consumer protection. *Roelle v. Griffin*, 59 Or App 434, 439, 651 P2d 147 (1982).

ORS 701.065(2)(a)(C) (1999) to encompass the application of equitable principles that, by their nature, are intended to avoid injustice. The history of the statute shows that the legislature was concerned about the perpetration of fraud on a contractor, but that was not its only concern. The act of defrauding a contractor of the fruit of its labor was used only as an example of circumstances that could afford relief under the statute.

With those understandings in mind, we turn once again to the phrase "substantial injustice" in an effort to carry out the legislature's intent. The phrase invokes doctrines of equity. One maxim of equity is that equity will not aid persons who have been unreasonably careless. *Van Horn Construct'n Corp. v. Joy et ux.*, 186 Or 473, 482, 207 P2d 157 (1949). Thus, equity will not aid a person whose dilemma could have been avoided if he had made a reasonable and proper inquiry. In other words, a contractor cannot rush headlong into a contract with its eyes shut to the licensing requirements of the law and then obtain court-ordered relief from its own foolishness.

The other side of that coin is that equity, in order to arrive at a just or fair result, will afford relief to a person who relies on information on which a reasonable person would have relied. From the perspective of a reasonable person, what better source of information about the administration of a licensing scheme exists than information from the agency charged with the enforcement of the scheme itself? It seems to do little to promote the interest of the state in protecting the public from unlicensed contractors in a situation where Andersen/Weitz relied on advice from the CCB, particularly in light of the fact that it purportedly became licensed within 90 days of the time that it learned that the advice it received was erroneous. We conclude that, if Andersen/Weitz establishes the predicate facts required by the statute, then it will have established as a matter of law that a "substantial injustice" will have occurred that satisfies the requirement of ORS 701.065(2)(a)(C) (1999).[8]

---

[8] Our conclusion is based on the summary judgment record before us. If the facts are different at trial, the trial court could reach a different conclusion of law about what constitutes a substantial injustice.

It follows from the above analysis that the trial court erred when it granted summary judgment to Splinters and Evergreen and to Andersen/Weitz. The opposition to both motions raised genuine issues of material fact. Those issues of fact preclude the grant of summary judgment as a matter of law.[9]

Reversed and remanded on appeal and on cross-appeals.

---

[9] We note that, in granting summary judgment, the trial court relied on our decision in *Parthenon Construction & Design, Inc. v. Neuman*, 166 Or App 172, 999 P2d 1169 (2000). In *Parthenon Construction & Design, Inc.*, we affirmed a summary judgment against the plaintiff contractor and held that, "because plaintiff was not 'registered continuously while performing the work for which compensation was sought,' plaintiff's construction-related claims were precluded." 166 Or App at 181 (quoting ORS 701.065 (1995)). It was undisputed in that case that the plaintiff was fully aware of the registration requirement, that he twice received notice of impending lapses of coverage, and that he twice failed to act in time on those notices. *Id.* at 180. *Parthenon Construction & Design, Inc.* is distinguishable from the present case because of those facts.